AMERICAN RADIATOR & STANDARD
SANITARY CORPORATION,
Appellant,

v.

The TITAN VALVE & MANUFACTUR-
ING COMPANY, Appellee.

No. 13043.

United States Court of Appeals
Sixth Circuit.

June 10, 1957.

As Amended on Denial of Rehearing
Sept. 6, 1957.

Victor DeMarco, Cleveland, Ohio, George H. Rudolph, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on the brief, for appellant.

Morris Berick, Cleveland, Ohio, Joseph F. Lombardo, Halle, Haber, Berick & Mc-Nutly, Cleveland, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

948

PER CURIAM.

This appeal arises out of an action for indemnity brought by plaintiff-appellant, American Radiator & Standard Sanitary Corporation, hereinafter called American, against defendant-appellee, The Titan Valve & Manufacturing Company, hereinafter called Titan.

American, a manufacturer of radiators and heating apparatus, had sold one of its hot-water heaters to Raymond P. Fix, and had installed it in Fix's home in Rock Rapids, Iowa. As Fix was endeavoring to light the pilot light on the heater an explosion occurred and Fix was seriously injured. He recovered judgment against American in an action filed in the District Court of South Dakota, which was reversed in the Court of Appeals for the Eighth Circuit, 200 F. 2d 529. On retrial the jury reached the same verdict as on the first trial, namely, $30,000 in favor of Fix, the plaintiff, and no appeal was taken from the second judgment.

The thermal unit in Fix's heater had been manufactured by Titan at its factory in Cleveland, Ohio, and delivered to American at its plant in Buffalo, N. Y., where it was incorporated by American into its heater. American paid the judgment and later sued Titan for the amount of the judgment, attorneys' fees and other expenses, claiming that Titan's negligence caused the injury. The parties waived jury trial and the case was tried to the court.

American asserts that it is entitled to recover under an implied warranty of fitness established in Section 1315.-16(A), Revised Code of Ohio, which provides:

"When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

American also relies on the Restatement of the Law of Torts, the Restatement of the Law of Restitution, page 407, Section 93(1), which provides:

"Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable."

The District Court found that American did not rely on Titan's skill or judgment, that it would not have been justified in relying on Titan's skill or judgment, that American was negligent in not detecting the defect in the pilot valve and entered judgment for defendant, dismissing the complaint.

The principal ground for the court's decision on the question of American's reliance on Titan's skill or judgment was that American, which over a long period had purchased thermal units from Titan for its heaters, after receiving the units from Titan, without exception checked them in an elaborate series of tests. All damaged cartons received from Titan were immediately checked. Spot checks were made of all other thermal units and every thermal unit incorporated in a heater was subjected to an extended functional test devised to determine whether the heater operated properly. The supervisory employees of American testified that no heater was sent out without being subjected to this functional test. American's witnesses testified that the purpose of the functional test was to determine, among other things, whether the pilot valve would function and would automatically shut off the flow of gas to the burners when the pilot light was out. In the course of these tests many defective units were

discovered and at once rejected and Titan accepted such rejection without question.

The particular thermal unit which caused the injury to Fix was tested by Professor Lee J. Amidon of South Dakota State College, an expert for American, who concluded that the defect which caused the explosion was due to faulty adjustment. This test was made without unsealing the parts. Later, after disassembling the parts, Amidon determined that the faulty adjustment which prevented the safety valve from stopping the flow of gas to the main burner when the pilot was off, was due to improper calibration. The actual defect in calibration could not be ascertained by visual inspection of the unit. For that purpose the sealed portion of the thermostat of the safety valve had to be opened and the parts examined. However, if a safety pilot is improperly adjusted so that gas can flow to the burners when the pilot light is out, that fact is easily discovered by simple tests. This was in substance the testimony of American's witnesses and was the specific conclusion of the Eighth Circuit Court of Appeals. American Radiator & Standard Sanitary Corporation v. Fix, supra, 200 F.2d 536. The fact that the safety pilot was improperly adjusted was also discoverable by American's functional test. As American's chief inspector testified, "We designed the test on our tank to make sure that our unit was an operating unit." He said that the valve "functioned in that we tested it for its ability to shut off itself, that no gas would flow through it when it was not supposed to. * * *"

While American employed printed tags which it attached to its heaters bearing the statement that the safety pilot was properly calibrated at the factory, the court considered it a fair inference that American made this statement in reliance upon its own and not upon Titan's tests.

The jury in the South Dakota case, in answer to special interrogatories, found that the safety valve which caused the injury was defective at the time it reached American's factory at Buffalo, N. Y. It also found that the same defect existed at the time the safety valve left American's factory. These special findings were incorporated in and made a part of the second judgment entered by the District Court of South Dakota, from which no appeal was taken.

American contends that since its overall test of the heater is functional and since this test does not open the sealed unit of the safety valve, it could not have discovered improper calibration and thus could not have located the particular defect in the safety pilot involved. However, Amidon testified in substance that a test similar to the one he made, by connecting the gas, turning it on, lighting it, heating it, letting it cool off, and turning the gas on again, would have revealed that the gas continued to flow, that this unit was not functioning, that the safety valve was not serving the purpose for which it was intended and in that condition was not fit for the intended purpose. By thus making a simple test which did not involve the opening of the sealed unit Amidon determined that the unit did not function properly and was not properly adjusted.

■ In view of the fact that American regularly and systematically inspected Titan's valves and rejected them in large numbers, we conclude that the findings of the District Court are not clearly erroneous. It is a reasonable inference from the record, based upon substantial evidence, that American in assembling its heater failed to rely upon Titan's skill or judgment, but relied upon its own tests. It is also a reasonable inference, as found by the District Court, that American could not justifiably rely upon Titan's skill, for, as shown by American's long experience with the large number of units that continually had to be rejected, Titan's skill could not be counted upon. Thus no implied warranty arose under Section 1315.16, Revised Code of Ohio, and the Restate-

ment of the Law of Restitution, Section 93, gives no assistance to American.

■ It is to be borne in mind that both parties were skilled manufacturers, with an equal opportunity to inspect the pilot valve. Because American was repeatedly installing the safety pilot in one of its heaters for the market, it owed its customers the duty of reasonable care in determining whether the pilot installed was workable and suitable. Its failure to make the simple test which would have discovered the defect in the safety pilot involved constituted negligence even though it had no original obligation with reference thereto. Verplanck v. Morgan, Ohio App., 90 N.E.2d 872; Gaynier v. Ohio Fuel Gas Company, 101 Ohio App. 324, 139 N.E.2d 624; Erie Railroad Company v. Stewart, 6 Cir., 40 F.2d 855; Indian Towing Company v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

■ The additional contention that American's tests might not have discovered the defect because Amidon tested the pilot in a room with 70° to 80° temperature and American's factory tests were conducted in a room with 65° temperature has no merit. American's chief inspector testified that if the safety valve was not properly calibrated he "assumed at that time that it would not" have passed American's operational test. He admitted that if the safety valve had reached American's plant calibrated exactly as found by Amidon, it would not have passed the operational test. It is mere surmise that the slight change in temperature of 5° to 15° would have caused a valve calibrated, as Amidon testified, "for general use," to permit the flow of gas at the point at which the automatic valve should shut it off. It was shown that room temperature was only "the rock bottom for safety" in such a test and that a safe testing temperature for this particular mechanism would be several hundred degrees above room temperature.

■■ In the South Dakota case the jury found in a specific finding incorporated in a judgment not appealed by American and hence conclusive against American (Massachusetts Bonding and Insurance Company v. Dingle-Clark Company, 142 Ohio St. 346, 347, 52 N.E.2d 340), that the safety valve was defective at the time it left American's factory. The District Court found that the improper calibration of the safety valve was due to Titan's negligence. It also found that American's failure to discover the improper calibration constituted active negligence on the part of American. As both American and Titan were guilty of active negligence, indemnity must be denied. Union Stock Yards Company of Omaha v. Chicago, Burlington & Quincy R. Company, 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453; Hartford Accident & Indemnity Company v. Gulf Refining Company, 5 Cir., 230 F.2d 346, certiorari denied Gulf Refining Co. v. Black Warrior Towing Co., 352 U.S. 832, 77 S.Ct. 49, 1 L.Ed.2d 52.

The judgment of the District Court is affirmed.

### On Denial Of Rehearing

The principal point urged by appellant in its petition for rehearing is that the opinion incorrectly stated that appellant relied in this case upon the Restatement of the Law of Torts, The Restatement of the Law of Restitution, page 405, Section 93(1).

This contention is shown by appellant's pleadings to be incorrect. While the complaint does not quote the Restatement verbatim, the gist of it is set forth in paragraphs 4 and 5 of the complaint. The use of the words "dangerously defective" in paragraph 5 demonstrates reliance upon the Restatement and the facts set forth in the complaint in effect allege "justifiable" reliance.

The petition for rehearing is denied.