No. 3391

Second Circuit

SEBASTIAN v. JENNESS ET AL.

(April 9, 1931. Opinion and Decree.)

C. B. Prothro, of Shreveport, attorney for plaintiff, appellant.

Clem V. Ratcliff and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendants, appellees.

WEBB, J. Plaintiff brought this action to recover judgment for damages alleged to have resulted from burns of the scalp sustained by her on August 19, 1925, at which time her hair was dressed or given a permanent wave at a beauty shop operated by defendant, Mrs. Connia Jenness, wife of J. F. Jenness, co-defendant.

Plaintiff alleged that an electrical appliance had been used in the process and the manner in which the burn was caused; that the appliance used was defective and that the burn sustained was due to the defective appliance and the carelessness and negligence of defendant and the operator who dressed plaintiff's hair.

Defendant answered admitting that an electrical appliance had been used, otherwise denying plaintiff's allegations; and especially alleged that plaintiff had not made any complaint at the time her hair was being dressed, and that if plaintiff received any injuries, which was denied, such injuries were not caused by any fault or negligence of defendants.

The evidence established that plaintiff's scalp had been burned or scalded while her hair was being dressed. There was no evidence introduced, however, tending to show that the electrical appliance used was defective, and the attendant, who was J. F. Jenness, co-defendant, stated that he had followed the usual method in dressing plaintiff's hair with the appliance.

The evidence shows, however, that in dressing the hair with the appliance, strands covering about three-fourths of an inch of the scalp are gathered together in tresses or locks, each of which is curled around a small metal rod and wrapped with a damp cloth; and that the rod is then inserted in a metal cylinder, which is closed at the top; that the bottom of the cylinder, which is placed at a distance of about three-fourths of an inch from the scalp, is closed with a clamp, and pads fitted around each lock of the hair are placed next to the scalp. The heat is applied at the top of the cylinder and the clamp is used to prevent the vapor generated in the cylinders from escaping, and pads are placed on the scalp to protect it from the heat thrown off from the cylinder, and steam or vapor which may escape from the cylinder.

There were twenty-one locks or tresses, covering one-half of plaintiff's head, being waved at the time plaintiff's scalp was burned, and Mr. Jenness states he had properly adjusted the cylinders and clamps and had placed the pads around each lock next to the scalp; but the evidence shows that even though the appliance is in good condition and all adjustments made, it is possible for the steam or vapor to escape from the cylinders and pass between the strands of hair to the scalp and cause a scald to the scalp or for the scalp to be burned from the heat thrown off from the cylinders; and that in order to prevent the scalp from being thus injured, the attendant stands by the patron while the heat is being applied, which was shown to have been done by the attendant, Jenness while plaintiff's hair was being dressed.

The evidence does not show that the operator had any means of controlling the heat or that the vapor which may escape from the cylinders between the strands of hair could be seen by the operator, and that the operator relies upon the patron, who is usually instructed to give him warning when the heat is too great or the scalp is being burned by the heat or scalded by the vapor.

In the present case, the evidence established that plaintiff's scalp was scalded and that the operator of the appliance, who was standing by plaintiff, had at hand an appliance with which such an injury could easily have been prevented had he known that the vapor was escaping from the cylinders; but the evidence is conflicting relative to whether or not plaintiff was instructed by the attendant, and whether or not she warned the attendant that her scalp was being burned or scalded. Plaintiff states that she was not instructed, but that she had warned the attendant that her scalp was being burned, which was denied by the attendant. But passing the conflict in the testimony, the statement of the attendant relative to both questions reads as follows:

"Q. What instructions, if any, do you give or did you give Mrs. Sebastian, or anyone else, when you give these permanent waves?

"A. You mean Mrs. Sebastian?

"Q. I mean anybody as respects to this feature of the matter.

"A. When we put curls on we instruct them to sit still. We tell them that they will feel the general heat of the curler but if any peculiar feeling comes up or any undue heat to let us know immediately. And in the meantime not to move.

"Q. Did you give Mrs. Sebastian those instructions?

"A. I did.

"Q. Did she let you know about any particular curl or curler being too warm?

"A. No, she complained quite a bit about the weight of these things and pulling the hair. She said she could feel the heat and I told her just like I tell everybody else that she would feel the general heat from the process and I asked her if she felt the general heat, and she said she could; that she was feeling so that she didn't have much feeling left, or something to that effect.

"Q. But did she ever complain or was there ever any complaint by her to you as to too much heat on any one curler?

"A. There was not.

"Q. If there had been any complaint by her or if it had been made known to you by any method whatever that too much heat was being applied to any one curl or any heat escaping from the curler to the scalp, what would you—what could you and what would you have done to have prevented that?

"A. Well, there is two or three different things. You could either slip the curler entirely off or we have one of these little cold air appliances to attach and turn on; and any time they complain I turn that on right next to the scalp and leave that on for a few minutes.

"Q. You are prepared with that appliance for that purpose?

"A. Yes, sir, in fact every permanent waver has some method of relieving the situation because all of them have to have it."

The evidence shows that the heat thrown off from the cylinders is such that it requires some fortitude to withstand, and that it is not unusual for patrons to complain, and that when the complaint is merely of the heat, it is usually disregarded. Passing any question relative to the liability of the attendant for injuries sustained when the patron merely complains of the heat, we do not think that, considering the instructions given plaintiff and the complaint made by her, the attendant was warranted to disregard the complaint, but that the attendant should have heeded the warning and used the simple appliance which he stated was at hand, and which would have prevented the injury.

Appellees suggest, however, that plaintiff assumed the risk; but conceding without deciding that such defense could be interposed where the patron was fully advised of the danger, and instructed that the operator had no way of determining whether

or not the scalp was being injured by the heat or vapor, and that he relied on the patron to give him warning, the evidence does not show that plaintiff was advised either of the danger or that the operator was relying on her to warn him when her scalp was being injured, and it cannot be said that plaintiff assumed the risk. Barnett v. Roberts, 243 Mass. 233, 137 N. E. 353; Reed v. Rosenthal, 129 Ore. 203, 276 Pac. 684, 63 A. L. R. 1073.

We are therefore of the opinion that defendants are liable for the damages sustained. Plaintiff claimed damages for permanent injury, pain, mental anguish, and expense incurred in having the burn treated. The expense incurred by plaintiff in having the wound treated, including physician's fees and traveling expenses to and from her home to the physician's office, is not shown to have exceeded $75, and while plaintiff suffered some pain, the evidence does not show that the pain was severe or continuous, and it appears that the scar left after the wound healed is not visible when plaintiff's hair is dressed.

In Sweeten v. Freedman, 9 La. App. 44, $500 was allowed for damages resulting from a similar injury, and under the evidence presented here, we are of the opinion that $750 will cover the damage sustained by plaintiff.

It is therefore ordered that the judgment appealed from be avoided and reversed; and it is now ordered, adjudged and decreed that plaintiff, Mrs. H. H. Sebastian, have and recover judgment against defendants, Mrs. Connia Jenness and J. F. Jenness, in solido, in the sum of $750, with legal interest thereon from judicial demand until paid, and all costs of suit.