## MIXON v. BRECHTEL.*

### No. 16468.

Court of Appeal of Louisiana. Orleans.

May 17, 1937.

*Writ of certiorari denied June 21, 1937.

For former decree, see 170 So. 558.

Jewell A. Sperling and Porteous, Johnson & Humphrey, all of New Orleans, for appellant.

M. C. Scharff, of New Orleans, for appellee.

WESTERFIELD, Judge.

A careful reconsideration has convinced us of the error of our former decree.

The defendant calls herself a "beautician." She employs a number of other beauticians. She calls her establishment the "Silhouette Beauty Salon." We have been unable to find the word "beautician" in any dictionary to which we have access, but we are, nevertheless, certain that it must signify a person skilled in the art or science of beauty culture—an expert. In this instance, defendant and her employees have diplomas, though the school or college which bestowed that distinction upon them is not mentioned. They are licensed by the State Board of Health. The mechanical equipment used in the Silhouette Beauty Salon is the newest and best obtainable, as defendant and her beautician witnesses freely attest.

To this modern establishment of expert, graduated beauticians plaintiff repaired for the purpose of having "two curls, one on each side at twenty-five cents." This operation was performed by Miss Wein, "and when she was going to have a permanent, Miss Wein turned her over to Miss Rabalais and Miss Wein stayed then for the shampoo and set." Miss Rabalais was unusually skillful. "She has been giving permanents continually with as many as twenty-four to thirty-six curls over the head and she has been doing that for several years." We are not sure that we understand all that was done to accomplish the result which Miss Mixon desired, but all seemed to go well until the "bakers" were applied to Miss Mixon's skull. During that process defendant, as was her habit, visited the scene of operation evidently in the rear of the establishment. "When I went back Miss Wein and Miss Rabalais were in the booth and Miss Mixon was having the 'bakers' put on her head and Miss Rabalais said: 'This girl is having her first curls * * *.' When they get warm let me know." When the "bakers" were removed there was a white spot on Miss Mixon's head.

The cause of the white spot is not clear. The defendant's counsel treated it as a burn and argued successfully that plaintiff should not recover, because, whatever fault or negligence might be imputed to defendant, plaintiff was guilty of contributory negligence in not complaining of undue heat when the "bakers" were applied, as invited to do by defendant's employees. But Miss Wein and Miss Rabalais both denied that there was a burn on Miss Mixon's scalp. The white spot, they insist, was caused by a "pull" which Miss Wein defines as "a pull is,—well the hair is wrapped on a rod, and if too tight it will pull the hair and cause swelling." Miss Rabalais declared that "both sides (of Miss Mixon's head) were pulled." However, we make no distinction between pulling the hair and burning the scalp so far as defendant's liability is concerned. If the "bakers" were in good order when used by defendant's employees, neither a pull nor a burn should result, otherwise the "bakers" should not be used at all. If no fault can be found with the machine, then the operator ·must have been negligent. As we said in Smith v. York, 152 So. 152:

"On the other hand, if the injury resulted from the use of the permanent waving device and the application of too much heat, then defendant would be liable, for, whether the device was defective, or the operator careless, would make no difference since, in either case, the damage must be held to have resulted from the negligence of defendant or of her employee. Sebastian v. Jenness, 16 La.App. 158, 133 So. 468; Sweeten v. Friedman, 9 La.App. 44, 118 So. 787; Cassidy v. Beauty Studio, Inc. (La.App.) 144 So. 517; Resor v. Capelle (La.App.) 140 So. 699."

■ The learned trial judge was correct in his statement in his reasons for judgment when he said:

"A person who undertakes to hold themselves out to the world as skilled in any art, trade or profession and have people put themselves or their cases or belongings in their charge, are perfectly and absolutely justified in relying on the skill and art and science that such a person holds himself out to have in the exercise of such a trade, profession or art and a person so doing is primarily liable for any damage that occurs."

■ The responsibility for injury to a customer of an expert beautician cannot be shifted to the customer by reason of her failure to warn the beautician that the apparatus employed for the purpose of beautification was generating too much heat. An appliance so dangerous, in expert hands, should not be used, particularly when the dangerous character of the instrument is not sufficiently revealed to the customer. The doctrine of assumption of risk does not apply. In the case of Sebastian v. Jenness, 16 La.App. 158, 133 So. 468, 469, the Court of Appeal, Second Circuit, in considering a similar situation, said:

"Appellees suggest, however, that plaintiff assumed the risk; but conceding, without deciding, that such defense could be interposed where the patron was fully advised of the danger, and instructed that the operator had no way of determining whether or not the scalp was being injured by the heat or vapor, and that he relied on the patron to give him warning, the evidence does not show that plaintiff was advised either of the danger or that the operator was relying on her to warn him when her scalp was being injured, and it cannot be said that plaintiff assumed the risk. Barnett v. Roberts, 243 Mass. 233, 137 N.E. 353; Reed v. Rosenthal, 129 Or. 203, 276 P. 684, 63 A.L.R. [1072] 1073."

Plaintiff's injuries consisted of a suppurating sore on the side of her head which left a permanent scar of no disfiguring character. She incurred a doctor's bill of $50. We believe an allowance of $750 for her injuries. plus her doctor's bill is a proper award. See Sebastian v. Jenness, supra.

For the reasons assigned, our former decree is recalled and annulled, and it is now ordered that the judgment of the district court be amended so as to reduce the amount awarded plaintiff from $1,000 to $800, and as thus amended, it is affirmed. Defendant and appellant-to pay all costs.

Our original decree recalled, and judgment of district court amended and affirmed.