## COOPER v. THE POWDER PUFF, Inc.
### No. 5745.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 4, 1938.

Lester Wilson, of Shreveport, for appellant.

Henry F. Turner and Irion & Switzer, all of Shreveport, for appellee.

HAMITER, Judge.

In this ex delicto action plaintiff asserts that an employee of defendant, a corporation engaged in selling and furnishing beauty treatments in the City of Shreveport, acted negligently in giving her hair a desired permanent wave, and as a consequence thereof she suffered severe burns and injuries. Damages are claimed herein for (1) pain and suffering, past, present and future, (2) injury to eyes and (3) disfigurement.

Defendant's answer to the petition created several issues, but most of them have since passed from the case. The defense relied on appears to be that no negligence attended the employee's work, and also that plaintiff was in no manner injured by the treatment.

Evidence with reference to the merits of the case was regularly and duly adduced, and thereafter the district judge rendered judgment condemning defendant to pay to plaintiff damages in the sum of $350. His decision, together with the record of the proceedings had, has been brought here for review through an appeal on defendant's part.

The undisputed facts are that plaintiff went to defendant's establishment on May 29, 1937, and asked that she be given a permanent wave. This treatment was being offered on that day at the special price of $2.50. The customer was accompanied by her baby and by her sister, Mrs. Neva Davis. Mrs. Bernice Price, the vice-president and manager of defendant corporation, was on duty at the time and assigned plaintiff to Mrs. Freda Musslewhite, an operator who was a licensed cosmetician in the State of Louisiana.

Thereupon the operator took charge of plaintiff, escorted her into a separate booth of the premises, and proceeded to furnish the required hairdressing. No scars or abrasions of the scalp were noticed by the operator at the time. In giving a treatment of this character, the hair is first prepared by shampooing and by affixing and applying thereto certain spacers, rods, protectors and a fluid. An electric heating machine is thereafter placed over it, and is operated for approximately nine minutes. This device cuts off automatically at the expiration of the named period, and does not touch the scalp. The texture of the hair determines the amount of heat to be used, and the apparatus is regulated accordingly. On completion of the purchased beauty aid, the giving of which required approximately two hours, plaintiff paid the stipulated amount at the main desk. She, her baby and sister then left the establishment and were driven to the former's home, located about six miles from Shreveport on the Mooringsport Road, by her husband.

On June 8, 1937, or the tenth day after the occurrence of the claimed accident, plaintiff visited the office of her family physician, Dr. J. G. Pou, and complained of three burns on her scalp. The physician examined her and found "three scalp wounds, third degree, she claimed it was burned, * * *. They were probably as big as a half dollar, maybe not quite so large. * * * It was an injury of some kind." Dr. Pou found considerable inflammation around the wounds at that time.

Plaintiff's next visit to her physician was on June 30, 1937. He noticed then that the wounds had completely healed, leaving three healthy scars. Each of two of these measured about one-half inch in diameter, while the remaining one was approximately three-quarters of an inch in size.

A further examination was made of plaintiff's scalp by Dr. Pou during the trial of the case on December 3, 1937, and this revealed three scars, with hair growing through two of them.

With reference to the actions of the parties in interest during the course of the hair dressing operation and shortly after its completion, the testimony in many respects is hopelessly conflicting. It is plain-

tiff's testimony that the heating machine was unworkable when first applied and several of the operators tinkered with it for a while before it could be used; that she became so hot from its use that she almost fainted and complaints about such condition were made; and that after the hair was set she "walked up to the desk and paid the lady, and my sister and I walked out, and I don't remember anything else; told my sister to call my husband; he came and got us and we went home." Mrs. Davis, plaintiff's sister, corroborates generally such testimony, and further states: "Well, they went ahead and washed her hair, then we got the baby and went out on the street and she said her head was burning awful bad, and felt like she was going crazy; I had to carry the baby and we went down to the grocery store and she wanted to call her husband to come and get us, and she just seemed like she was crazy with her head; said it was hurting so bad and burned."

Mrs. Musslewhite, the operator, and several other defense witnesses who were in the establishment at the time, testify that nothing unusual occurred during the hairdressing process; that no complaint whatever was made by plaintiff that her "head was getting hot"; and that several expressions of satisfaction and complimentary statements regarding the work were uttered by her prior to departing from the shop. Emphatic denials are made by plaintiff and her sister with reference to the making of the remarks of approval attributed to the former.

The trial judge, in his memorandum opinion which is in the record, observes that:

"The evidence on the question of fact is very conflicting, but the plaintiff is corroborated by her sister, who was present, and the fact that immediately afterwards plaintiff's scalp became affected and there is no other circumstance pointed out that would cause plaintiff's condition. Defendant suggested other causes, but Dr. Pou testified that the sores were the result of an injury of some kind. 'It was not the result of a boil or other skin disease. I could not say it was a burn.' Therefore, I considered that under the evidence plaintiff had proven that the condition of her head was a result from the permanent wave given by defendant—not that the metal points burned through the skin on plaintiff's head, but that the application of heat was so great

that it caused a burn or blister, resulting in the condition proven."

We are unable to say that his findings of fact and his conclusion are manifestly erroneous. The opportunity was afforded him to observe the witnesses as they testified. This we do not have. Our review is based solely on the typewritten transcript of testimony which is in the record. Supplementing his comments it might be stated that, according to the evidence, considerable heat emanates from the electrical apparatus in the giving of a permanent wave; and a reasonable deduction is that the scalp is unusually warm during the course of the treatment. In view of this, and conceding arguendo that plaintiff made no complaint at the time but on the contrary complimented the work, it is not improbable that the burns sustained were not felt or noticed by plaintiff until after she left the building and the scalp had become somewhat cooled.

The law of this state with reference to the liability of a beauty parlor operator in cases of this kind is set forth in Mixon v. Brechtel, La.App., 174 So. 283, (writ of certiorari denied by Supreme Court). The opinion of that case states [page 284]:

"The learned trial judge was correct in his statement in his reasons for judgment when he said:

"'A person who undertakes to hold themselves out to the world as skilled in any art, trade or profession and have people put themselves or their cases or belongings in their charge, are perfectly and absolutely justified in relying on the skill and art and science that such a person holds himself out to have in the exercise of such a trade, profession or art and a person so doing is primarily liable for any damage that occurs.'"

Also, it quotes from Smith v. York, La. App., 152 So. 152, as follows:

"On the other hand, if the injury resulted from the use of the permanent waving device and the application of too much heat, then defendant would be liable, for, whether the device was defective, or the operator careless, would make no difference since, in either case, the damage must be held to have resulted from the negligence of defendant or of her employee. Sebastian v. Jenness, 16 La.App. 158, 133 So. 468; Sweeten v. Friedman, 9 La.App. 44, 118 So. 787; Cassidy v. Beauty Studio,

Inc., La.App., 144 So. 517; Resor v. Capelle, La.App., 140 So. 699."

Criticism is directed by both parties litigant to the quantum fixed by the trial judge. An answer to the appeal has been filed by plaintiff in which she prays that the damage awarded be increased from $350 to $1550, and her counsel earnestly and at length argue in support of the suggested increase. On the other hand, an equally vigorous and earnest argument is furnished by defendant's counsel to the effect that if there is liability the amount awarded should be not more than $100.

We find from the evidence, as did the trial judge, that neither noticeable disfigurement nor appreciable injury to the eyes was sustained by plaintiff; consequently there should be no recovery with respect to these items.

It is our conviction that plaintiff endured much pain from the burns. When she visited her physician ten days after the date of injury, the three scalp wounds were found to be approximately the size of a half dollar and considerable inflammation attended them. According to her testimony and that of her husband, sister and sister-in-law, she spent several weeks in bed following the accident. Defense counsel argues that if a great amount of suffering and pain had resulted, a doctor would have been consulted at an earlier date. This is answered, we think, by the fact that plaintiff and her husband are persons of moderate financial means and that she did not desire to incur medical expense unless absolutely necessary. In this connection she states: "They wanted me to go to the doctor,—I have three children and every bill you run up is that much more, and if I could stay away from the doctor, I stay away." On the other hand, we are of the opinion that the pain and suffering were not so intense and enduring as plaintiff claims. The wounds were completely healed within one month following the date she obtained the permanent wave, and her own physician states that he did not consider her injuries serious when he treated her on the first occasion. Plaintiff's testimony as to the size of the burns is that, " * * * I had three big knots, as big as an egg, on my head. * * *" Regarding this, however, her counsel says in brief that, " * * * doubtless this was an exaggeration due to the fact that she could not see them, and it is natural to think a bump on the head is larger than it really is."

Our careful study of all of the evidence leads us to the conclusion that the amount awarded by the district court is neither inadequate nor excessive, and that it does justice between the parties. Therefore, we shall not disturb his award.

The judgment appealed from is affirmed with costs.