REGAN, Judge.
Plaintiff, Mary C. Bethancourt, instituted! this suit against the defendants, Seligman & Latz, Inc., the owner of the Antoine Beauty Salon,[1] and its insurer, Employers Liability Assurance Corp., endeavoring to recover $6,656.00 representing damages which she incurred as the result of the application of a permanent wave which ruined her hair.
The defendants answered and admitted that the permanent wave was unsatisfactory; however, they asserted in defense thereof that the plaintiff was warned in advance that the result of the operation was unpredictable since her hair was bleached and, therefore, she assumed a known risk.
From a judgment awarding plaintiff the sum of $1,200.00, the defendants have prosecuted this appeal. Plaintiff has answered the appeal and requested that the award be increased to $2,500.00.
The record reveals the plaintiff to be an attractive unmarried woman of approximately twenty-one years of age who, in the ardent pursuit of that nebulous attribute of the female termed “beauty”, had bleached and stripped her hair at various intervals during a period of two years prior to her first visit to the defendant’s salon, which occurred on August 26, 1961.
Stripping, as the record informs us, is a chemical process whereby a cosmetologist completely removes the natural color from the hair, and then applies a “toner” or coloring in the shade desired by the client. *923 On four occasions during the year of 1961, Charles Cangelosi, the plaintiff’s former beautician employed by a salon located in Maison Blanche, testified that he had stripped and bleached plaintiff’s hair; however, he refused to apply a permanent wave thereto when she requested it for the reason that it would not “take” well on bleached hair and, therefore, she would be displeased with the cosmetic result.
On August 26, 1961, plaintiff made an appointment to have her hair styled by Augus-to Lemon, a cosmetician employed by the Antoine Beauty Salon. She requested that he apply a permanent w.ave to her hair, and he advised her that it would be necessary first to condition it. This he proposed to accomplish through the medium of oil treatments which would remedy the dehydrated ■condition caused by the application of a ■bleach over a period of several years. She acquiesced, and on this occasion one treatment was administered. One week later, or on September 2, 1961, she was given a second treatment, and thereafter, Lemon applied a permanent wave to her hair. ■ The result was, in effect, as far as plaintiff was ■concerned, a cosmetic disaster, which of ■course, provoked this litigation.
Plaintiff testified that she instructed the •cosmetologist to apply the wave if, in his opinion, the result would be satisfactory. She stated that initially he was reluctant, but after meditation and consultation with Muriel Wagner, a shampoo girl who assisted him, he decided that her hair might be ready for a permanent wave. Lemon conversely asserts that he warned her he would only apply the wave if she would assume full responsibility for the result. The shampoo girl related she could not recall Lemon’s warning plaintiff, for, as she explained, she assisted other operators and was not present all of the time that the plaintiff was being treated.
In view of the fact that the cosmetologists or beauticians employed by the principal defendant held themselves out to the public as experts in the field of cosmetic beautification, it may be of significance to point out that Lemon, the cosmetician who applied the wave to plaintiff’s hair, had been a graduate of a “beauty school” for seven months, and in the employ of the defendant for about three months when this unfortunate calamity occurred. In response to pertinent interrogation, he related that he was fully aware of the fact that the application of a permanent wave very often produced an unsatisfactory chemical result upon bleached hair, yet he failed to make a test curl from a few strands of plaintiff’s hair in order to determine how it would be affected. He related that “beauty schools” advise their students to make these tests prior to the application of the wave, but, he explained, in actual practice a beautician is much too busy to afford the time required to make the test and, therefore, relies upon his own judgment which, to a large extent, is predicated on past experience.
In any event, the wave completely dehydrated plaintiff’s hair, which at the time of the application was approximately five inches long. This fact was confirmed by Dr. Philip Lorio, a dermatologist, who examined plaintiff within the week of the cosmetic fiasco. The only portion of her hair undamaged was the growth approximately yi inch from the scalp. The rest was unmanageable. Dr. Lorio compared the application of a permanent wave to bleached hair to the pouring of kerosene on a fire.
About two weeks after application of the wave, the plaintiff had all of the burned hair removed from her scalp and a growth of only Yi inch of hair remained thereon, which she said, created the effect of a “crew cut”. In order to appear presentable to the public, she ordered a wig to wear until nature replaced what she had lost. Since it required six weeks for the wig to be prepared and imported from France, she rented a wig. In approximately nine months time, her own hair had grown sufficiently to permit her to engage in business and social functions without wearing the wig.
*924 Predicated on the foregoing facts, the trial court rendered judgment for the plaintiff and we are of the opinion that this decree is correct, for the testimony of Lemon convicts him of negligence.
This is so because he failed to test curl several strands of plaintiff’s hair before applying the permanent wave, which would have disclosed to him that the wave would ruin it. This omission was particularly obvious in view of the fact that he knew that the application of a permanent wave very frequently produced an unsatisfactory chemical reaction upon bleached hair.
Relative to the quantum awarded, the defendants assert that it is excessive; on the other hand, the plaintiff argues that it is inadequate.
Plaintiff proved, with that certainty required by law, the following special damages:
Loss of wages for two weeks- absence from work during which time plaintiff had not acquired a wig. $140.00
Reimbursement for cost of permanent wave 25.00
Medical to Dr. Philip Loria 20.00
Cost of wigs, both for rental and purchase 243.00
Cost of cleaning and styling wig 216.00
$644.00
The balance, or $556.00, was awarded for humiliation, embarrassment and discomfort which the plaintiff suffered during the nine months time required by nature for her hair to grow to its previous length.
The award of damages is left largely to the discretion of the trial judge, and in the absence of an abuse of discretion, the judgment will not be disturbed. In this case, we are of the opinion that the award is neither manifestly inadequate nor excessive.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Located in Godehaux’s Department Store in New Orleans.