HALL, Judge.
Mrs. Jean Katz sued Seligman & Latz, Inc., (d/b/a “Antoine Salon”) and its liability insurer, The Employers’ Liability Assurance Corporation, Ltd., for damages allegedly caused by a hair straightening procedure which she underwent at “Antoine Salon” on March 19, 1963. Defendants denied any negligence on the part of the beauty salon and specifically pled the doctrine of Assumption of Risk. The case was tried before a jury and resulted in a verdict in plaintiff’s favor for $5,300.00. Defendants filed a motion for a remittitur which was denied and judgment was rendered in accordance with the jury’s verdict. Defendants appealed.
Appellants contend that there was no proof of negligence on the part of the beauty salon and that the doctrine of res ipsa loquitur is not applicable under the circumstances of this case. Alternatively appellants contend that the jury’s verdict is grossly excessive.
The record reveals that plaintiff was a regular customer of the “Antoine Salon” where she had been in the habit of having her hair straightened about twice a year. On March 19, 1963 she went there to have her hair “straightened, shampooed and set.” Miss Alice, the operator who had straightened her hair on previous occasions, was not available and another operator, Miss Pinto, undertook the job. Miss Pinto had previously done work on plaintiff’s hair but she had never straightened it. Plaintiff informed Miss Pinto that she wished to have her hair straightened and wanted her to use the same cream preparation that Miss Alice had formerly used for this purpose because she had found it to be very satisfactory. Miss Pinto, however, insisted that a permanent wave solution would be more effective and plaintiff acquiesced in its use although she preferred the cream preparation. Miss Pinto proceeded with the work by leaning plaintiff’s head over the wash basin and pouring the wave solution over her entire head and then concentrated on the front part of her head pouring the solution on and working it in with her fingers. Plaintiff testified that “after a couple of minutes” her head started burning and she complained to Miss Pinto who assured her that it would do no harm; that it was supposed to burn. The burning got *697 worse and plaintiff continued to complain but Miss Pinto continued to pour the solution on her head working it into the scalp for about fifteen minutes, after which Miss Pinto left to attend another customer and turned the job over to a maid who continued the process for another fifteen minutes. The burning sensation got much worse but Miss Pinto assured her that the solution was perfectly harmless and would not damage her scalp in any way.
Thereafter Miss Pinto shampooed and set plaintiff's hair and placed her under the dryer. Plaintiff testified that the dryer got terribly hot and complained to a maid who was passing by. The maid adjusted the control but it did no good and plaintiff complained to a beauty operator who also tried to adjust the dryer, but it never did get cooler and finally, according to plaintiff's testimony, she was in such torture that she jumped out from under the dryer even though she had been there only ten or fifteen miutes.
Plaintiff testified that she went home with her scalp sore and burning and on the third day thereafter when she awakened she noticed that her pillow was full of hair. The following day she noticed even more hair on her pillow. The hair loss became progressively worse and she finally consulted Dr. J. Browne Larose, Jr., her family physician.
Dr. Larose testified that plaintiff came to see him on April 1, 1963; that at the time he examined her there was hair in the affected area that could be pulled out by the handfull and that the hair appeared dull and lifeless and broke very easily. He stated that he did not see any inflammation of the scalp and there appeared to be new hair growing out. He said he thought this condition was due to the treatment she had had on March 19th and that it was probably caused by the chemical used. Dr. Larose prescribed a tranquilizer for plaintiff who was very nervous and advised her to see Dr. Leslie K. Mundt, a dermatologist.
Dr. Mundt testified that plaintiff visited him for the first time on April 9, 1963, having been referred to him by Dr. Larose. After taking her history Dr. Mundt observed that plaintiff’s hair was falling out and getting thin over a hand sized patch on the right anterior scalp; that new hairs were growing out and that the scalp was normal, but observed that this was three weeks after the solution had been applied.
When asked what was his medical opinion as to the cause of the hair loss, based on the history given by plaintiff and what his examination revealed, Dr. Mundt stated:
“A. I think there is a combination of factor. One is that if this solution burned her scalp and she felt immediate smarting and burning and it was applied over the thirty to forty-five minute period, and the next morning the hair fell out, there obviously was an acute inflammatory reaction in the scalp because of the chemical — with redness, swelling of the scalp — acute inflammation which caused the hair to fall out by the roots, and then the very fact that the hair broke off so easily and was listless and brittle, that would involve the straightening procedure, plus the chemical on the hair.
I think either one alone would not have done it, but probably the combination — so it was a combination of the aforementioned conditions that caused the hair to fall out.
“Q. And what about the excessive heat in the hair dryer?
“A. That is a factor I overlooked. I think that much heat, where she had to remove herself from the hair dryer, on two occasions — that it was so hot — and naturally that would damage the scalp and hair.”
*698 Plaintiff visited Dr. Mundt on three other occasions, viz. on April 16, April 23 and on May 7, 1963. On this last visit Dr. Mundt said that the hair was still falling out and was still thin but seemed to be regrowing. He suggested that she return to Dr. Larose as she was very nervous. However plaintiff did not return to Dr. Larose and sought no further medical attention for her hair loss.
Plaintiff adduced the testimony of Mrs. Sylvia K. Boihem, an expert beautician. Mrs. Boihem explained in detail the methods used in the process of straightening hair both with a cream and with a solution. She stated that after a customer’s hair had once been straightened with a cream it is not advisable to use a wave solution to straighten it and that the standard of good practice requires that this not be done without first running a patch test to determine if the hair is in good condition. She further testified that if during the process of using the solution the customer persistently complained of burning, the solution should be rinsed off immediately; that a chemical burn to the scalp caused by the solution could cause'the loss of hair.
Defendants’ witnesses were Miss Pinto, the beautician from the “Antoine Salon” who had performed the hair straightening job for plaintiff, and Miss Barbara Semi-day, an expert beautician.
Miss Pinto testified that in straightening plaintiff’s hair she followed the usual procedure; that at the “Antoine Salon” the permanent wave solution is normally used and that she suggested its use to plaintiff; that while she was applying the solution plaintiff complained “that the scalp burned a little bit and I said that’s normal because the solution is strong.” She stated that plaintiff did not complain again. She also stated that she did not leave plaintiff during the straightening process. She further testified that when plaintiff was under the dryer plaintiff “mentioned that the dryer was hot” and that she changed plaintiff to another dryer. She knew that plaintiff had had her hair straightened before but did not run any patch test on it.
Miss Semiday testified that the permanent wave solution was kinder to the hair than the cream straightener; that the wave solution burns a little when it is applied and when a customer complains she checks the scalp to see if it is red; that if a customer stood up and screamed and got hysterical she would stop; otherwise she would continue to apply the solution. Miss Semiday testified that she uses a patch test only when the hair has been damaged from tinting or coloring.
We are of the opinion that there is ample evidence in the record to support a finding by the jury that plaintiff’s hair loss was caused by negligence on the part of the employees of “Antoine Salon”, and we find no manifest error in its finding of liability.
“It is well settled that the trial judge’s findings on question of fact, and particularly on questions involving the credibility of witnesses who testified before him, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous * * * ” Orlando v. Polito, 228 La. 846, 84 So.2d 433, 434. (See also Barlotta v. Walker, 223 La. 157, 65 So.2d 122)
We find no need to discuss the applicability of the doctrine of res ipsa loquitur to this case.
Defendants’ plea of Assumption of Risk has no foundation for the reason that beauty parlor operators hold themselves out as experts and persons skilled in their art, trade and profession and their customers are justified in relying on that skill and art. (See Mixon v. Brechtel, La.App., 174 So. 283; Cooper v. The Powder Puff, Inc., La.App., 184 So. 593.)
QUANTUM
The jury awarded $5,300.00 damages to plaintiff. The special damages proven at *699 the trial consisted of a $5.00 charge by Dr. Larose, $30.00 by Dr. Mundt and three prescriptions totalling $12.64. Thus the total special damages amounted to $47.64.
Plaintiff suffered no physical pain beyond the burning sensation and soreness resulting from the treatment which she testified wore off “after a day or so.” She admitted that her damages consisted entirely of emotional distress arising from her hair loss.
The record reveals that the hair damage was confined to a hand sized on the right front portion of her scalp. The hair loss in this area was only partial and both doctors found there was new growth and that her condition gave evidence of improvement when they first saw her.
There is no doubt that plaintiff became extremely nervous and upset over the loss of her hair. Both doctors prescribed tranquilizers for her. On her last visit to Dr. Mundt (May 7, 1963) he found her depressed and crying and told her “ * * * if this continued she should see her family physician * * Plaintiff did not return to Dr. Larose and sought no further medical attention.
Plaintiff’s testimony, corroborated in the main by that of her husband, was that she was so emotionally upset that she cried all of the time and had to curtail her social engagements because she was so embarrassed and humiliated over her condition; that pri- or to the hair loss she was active in many social and civic clubs but after she commenced losing her hair she would not go anywhere; that she and her husband had cancelled a convention trip to Europe on account of her embarrassment; that they had planned to build a new home but gave it up because she would not go to see the contractor because of her hair problem. Plaintiff testified that her emotional distress persisted for about nine months until her hair grew out again and that even at the date of the trial (February 13, 1967) her hair in the affected area was so thin she had to change her hair style.
After reviewing all of the facts and circumstances of this case we are of the opinion that the jury’s award of $5,300.00 was an abuse of the “much discretion” vested in it and that the award should be reduced to the sum of $2,547.64. (cf. Bailey v. American Motorists Insurance Company, La.App., 189 So.2d 106; Bethancourt v. Employers’ Liability Assurance Corp., La.App., 153 So.2d 921.)
For the foregoing reasons the judgment appealed from is amended by reducing the damages awarded plaintiff from $5,300.00 to the sum of $2,547.64 and as so amended and in all other respects the judgment is affirmed. Costs of this appeal to be borne in equal proportions by appellants and ap-pellee.
Amended and affirmed.