260 So.2d 731 (1972)
Mrs. Dorothy TOLMAS, wife of/and Bernard A. HORTON
v.
SELIGMAN AND LATZ, INC., and Employers-Commercial Union Insurance Companies.
No. 4786.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearing Denied May 2, 1972.
Writ Refused June 15, 1972.
*732 Tolmas, Schiro & Horton, Dorothy T. Horton and Gerson Z. Tolmas, New Orleans, for plaintiff-appellant.
Hammett, Leake & Hammett, Frank B. Hayne, III, New Orleans, for defendants-appellees.
Before CHASEZ, REDMANN and BOUTALL, JJ.
BOUTALL, Judge.
This is an appeal by plaintiff from an adverse jury verdict and resulting judgment dismissing her suit.
The undisputed facts are that plaintiff-appellant, on September 8, 1969, went to defendants' beauty parlor and requested a particular permanent wave and hair style that defendants had advertised in the newspaper for $12.50. The beautician suggested a more expensive and different permanent wave and this was agreed to and done.
Appellant alleges that as a result of this permanent wave, her hair immediately became kinky, dry, brittle and unsightly and, when she brushed it, began breaking off. The condition was such that she was required to buy several hair pieces to hide it, the wearing of which hair pieces caused considerable discomfort to her. She was also required to take a number of hair treatments to prevent the hair from breaking off at the scalp. She was caused considerable embarrassment and mental anguish, as well as considerable expense and loss of time.
As opposed to this, appellees contend that appellant's hair was in bad condition when she came to the beauty parlor, that despite this she insisted on receiving the permanent wave and assumed the risk, that the wave was given with great skill and care, and that the hair condition complained of was in no way due to their fault or negligence.
Appellant assigns the following specifications of error:
1. The doctrine of res ipsa loquitur was not properly applied;
2. The defendants were negligent;
3. The plaintiff did not assume the risk;
4. The trial court should have granted a new trial.
This being a jury case we have before us no reasons for judgment and thus we are unable to determine with certainty upon what basis the jury arrived at its verdict. The case presented stands on two (2) bases, alleged negligent actions of the defendant operator and the application of the doctrine of res ipsa loquitur.
A thorough examination of the evidence convinces the court that the appellant's hair was damaged severely as a result of the permanent wave. Appellant and her husband testified that her hair was in good condition until the wave was administered, after which time the breaking-off manifested itself. This was corroborated by two other substantial witnesses.
Three days later (she had cases scheduled in court and unbreakable appointments for two (2) days) she had her hair examined by her usual hairdresser, Thurman *733 Howell, who examined her hair and concluded the dry, brittle hair was caused by an over-processed permanent wave. Howell testified both factually and as an expert. He handled Mrs. Horton's hair for years on a regular weekly basis and testified both as to the good condition of her hair the weeks before September 8, and its poor condition later.
As opposed to this, defendants produced only the testimony of Mrs. Jenny Magliolo, the operator who performed the permanent wave on September 8, that Mrs. Horton's hair was in bad condition when she came into the shop and was none the worse when she left the shop. When asked what she meant by "bad condition" she testified, "by bad condition I mean she had color from a half inch and she had a frosting job done". This is materially different from the condition of brittleness and breaking which manifested itself that night and thereafter. We might also note that although Mrs. Horton notified defendants of her hair condition by letter three (3) days later, defendants did not seek examination thereof until shortly before March 9, 1970, at which time she was examined by Dr. McLean.
We conclude on the basis of this evidence that the subsequent condition of appellant's hair was due to the application of the permanent wave on September 8, 1969, and that, if the jury concluded otherwise, it was manifest error.
We now focus our attention on the events which took place on that day because we are now brought to face a more complex issue. The events of that day are testified to only by Mrs. Horton and Mrs. Magliolo and their testimony is in direct conflict for the most part. If we consider this testimony only, we would be forced, perhaps, to apply the familiar rule that we cannot disturb the findings of the trier of fact in the court below, especially where there is a question of belief of the witnesses' testimony, unless it is manifestly erroneous. However, there is no such evidentiary finding here and we do not consider this to be appropriate to a resolution of the issue here presented.
Such may be the case where we had to decide only a clear issue of negligence, but we are presented with two (2) serious questions of law, that is, assumption of risk and the doctrine of res ipsa loquitur.
On the question of assumption of risk we note the following evidence. Mrs. Horton testified that she went to that particular beauty parlor to receive a special permanent wave advertised in the newspapers. She informed the operator that her hair was both tinted and frosted, and indeed the operator recognized this fact. Additionally, she informed the operator that her hair took curls very easily. This the operator denied.
The operator testified that Mrs. Horton's hair was in bad condition and that she told Mrs. Horton that the wave advertised in the newspaper would not be appropriate. She did not wish to give Mrs. Horton a permanent but suggested tinting the hair instead. She relates that Mrs. Horton insisted on a permanent wave and so she recommended a hair conditioner treatment first and then a higher-priced but milder wave. She contends that this was overheard by, and could be verified by the receptionist and another operator. This verification was not forthcoming, however, because these employees were not produced as witnesses, even though defendants were notified only several days later of the impending claim. This serves to create a presumption that these witnesses would not so testify if called. CHF Finance Discount "A" Company v. Robinson, 249 So.2d 217 (La.App. 4th Cir., 1971).
However, without consideration of this presumption, the evidence does not show affirmatively that Mrs. Horton was told of the consequences that might, and in fact did, arise. When the beauty operator recognized the tint and frosting in the customer's hair, and concluded that the desired *734 wave could not be given and instead suggested a different and more expensive treatment, consisting of application of a conditioner and different wave solution, the customer, in the absence of express warning, was entitled to rely on the skill and experience of the operator to achieve the desired result. Mixon v. Brechtel, 174 So. 283 (La.App.Orl.1937); Sebastian v. Jenness, 16 La.App. 158, 133 So. 468 (2nd Cir., 1931).
In Katz v. Employers Group of Insurance Companies, 204 So.2d 695 (La.App. 4th Cir., 1967), we said:
"Defendants' plea of Assumption of Risk has no foundation for the reason that beauty parlor operators hold themselves out as experts and persons skilled in their art, trade and profession and their customers are justified in relying on that skill and art." (204 So.2d 698)
The remaining issue before us is the application of res ipsa loquitur to the case. Numerous cases have held that the doctrine is applicable to hair treatments and permanent wave operations, and it is applicable not only to the use of mechanical devices but also to the chemical solutions used in the process. Martin v. Lehmann, 147 So.2d 243 (La.App. 4th Cir., 1962); Bush v. Bookter, 47 So.2d 77 (La.App. 1st Cir., 1950). It is apparent that the application of the doctrine is dependent upon the situation in each case, and we think that there was error in not applying the doctrine of res ipsa loquitur in this case.
It is noted that Mrs. Horton was seeking a special, advertised wave. Considering the condition of her hair (tinted and frosted) and recognizing the unsuitability of that process, the operator suggested another process which was entirely under her control. Under the doctrine of res ipsa loquitur, the defendant bears the burden of showing absence of negligence on its part. There is conflicting testimony as to the length of time the wave solution was left in the customer's hair and as to whether test curls were taken during the process. We find the testimony of the operator to be confusing as to the length of time the solution was applied. Additionally, there is evidence that the application of the wave solution to tinted and frosted hair could of itself cause the damage complained of. See, for example, Katz v. Employers Group of Insurance Companies, supra. We cannot conclude that the defendants have exculpated themselves and thus, we are of the opinion that the judgment should be reversed.
Because the case was dismissed by the jury there is no amount of damages set.
The evidence shows that Mrs. Horton's hair broke off over her entire scalp leaving only short stubs in the most part. To save the balance of her hair and to encourage new growth, it was necessary that she undergo hair treatments weekly. She was required to wear two (2) hair pieces fashioned into her own hair, tinted a consistent color, to hide her near bald condition and this caused considerable inconvenience and some headaches. This condition lasted some five (5) months until her new hair grew long enough to restore her normal routine.
The cost of these treatments and the acquisition of the hairpieces totaled $551.18. However, a portion of this ($4.00 each visit) was for a shampoo and set which she customarily obtained anyway and we therefore deduct the sum of $68.00.
In addition to the time, pain and inconvenience, Mrs. Horton also suffered humiliation, embarrassment and anguish because of her appearance during this period. She was an attorney and enjoyed a considerable trial practice, requiring frequent court appearances and constant meetings with clients. At that time, she was heavily engaged in promotion of the Methadone Program for rehabilitation of narcotic addicts which required numerous public appearances. Similarly, her activities as an officer *735 of the Criminal Courts Bar Association, the North American Judges Association, as well as her social and political activities, caused her to be before the public eye. As a professional woman she naturally desired to create a favorable impression upon those with whom she came in contact.
For her temporary loss of hair, inconvenience, pain, embarrassment and anguish we award the sum of $1,500.00.
Accordingly, we reverse and annul the judgment of the trial court and render judgment in favor of plaintiff, Mrs. Dorothy T. Horton, and against defendants, Seligman and Latz, Inc., and Employers' Liability Assurance Corporation, Ltd., in solido, in the sum of $1,983.18 with legal interest from date of judicial demand until paid, and cast defendants for costs in both courts.
Reversed and rendered.