333 So.2d 342 (1976)
Gail McFarland SHEPPARD, Plaintiff and Appellant,
v.
TRAVELERS INSURANCE COMPANY and J. C. Penney Company, Inc., Defendants and Appellees.
No. 5452.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
Rehearing Denied June 30, 1976.
*343 Edwards, Stefanski & Barousse by Homer Ed. Barousse, Jr., Crowley, for plaintiff and appellant.
Davidson, Meaux, Onebane & Donohoe by Ken Williams, Lafayette, for defendants and appellees.
Before DOMENGEAUX, WATSON, and GUIDRY, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant, Gail McFarland Sheppard, instituted this tort action against *344 the defendants-appellees, J. C. Penney Company, Inc., and its liability insurer, Travelers Insurance Company, for damages allegedly caused to her by an employee of the former. From a judgment of dismissal the plaintiff has appealed. We reverse.
On September 5, 1972, plaintiff entered the beauty salon of the J. C. Penney Company, Inc. store in Lafayette, Louisiana, to have her hair "retouched". Some time prior thereto plaintiff had had her hair bleached blonde at the same beauty salon and was returning for a periodic treatment by which a portion of her hair representing new growth was to be bleached so that its color would correspond with the hair which had been previously treated.
The original bleach treatment and subsequent bleach retouch procedures were apparently performed by the same individual, Pauline Nix. On the date in question Ms. Nix began to perform the bleach retouch treatment on plaintiff's hair. Prior to commencement of the treatment she inquired as to whether plaintiff was currently taking any type of medication. After receiving a negative response she proceeded with the bleach retouch. After some time Ms. Nix noticed that plaintiff's hair was breaking off a short distance from the scalp on the frontal portion of the head and again queried plaintiff about medication. This time plaintiff admitted that she was presently taking two drugs, viz: Valium 5 and thyroid pills.
Ms. Nix hastily removed the remainder of the bleaching agent from plaintiff's hair and applied massive doses of a protein conditioner. Plaintiff was told, in effect, "that everything would be alright" and was given a type of wiglet to wear over the injured portion of her hair. When plaintiff removed the wig some four days later she discovered that a substantial portion of the hair along the front portion of her head was broken off approximately one-half inch from the hairline. She returned to the defendant's beauty salon and was furnished wigs and given remedial treatments at no charge for a period of approximately two months. After that time defendant ceased said "gratuities". She subsequently instituted this law suit claiming that the damage to her hair was caused by defendant's employee's negligently "overlapping" the bleaching agent onto that portion of the hair already treated, thus damaging it to a point of breakage. Defendant contended that the damage was a result of the combination of the bleach and the medications which plaintiff was taking at the time.
Plaintiff alleges two specifications of error:
1. The trial judge erred in his failure to apply the doctrine of res ipsa loquitur to the instant case.
2. The trial judge erred in finding that plaintiff failed to prove her case by a preponderance of the evidence.
The principle of res ipsa loquitur is a rule of circumstantial evidence. To invoke applicability of the doctrine, three requirements must be met: (1) The accident which damaged plaintiff must be caused by an agency or instrumentality within the actual or constructive control of the defendant; (2) The accident must be of a kind which ordinarily does not occur in the absence of negligence; and (3) The evidence as to the true explanation of the accident must be more readily accessible to the defendant than to the plaintiff. See Calix v. Whitson, 306 So.2d 62 (La.App. 4th Cir. 1974); Wells v. Woman's Hospital Foundation, 286 So.2d 439 (La.App. 1st Cir. 1973), writ refused 288 So.2d 646; Haymark and Sons, Inc. v. Prendergast, 268 So.2d 110 (La.App. 3rd Cir. 1972); 25 La.L.Rev. 748, 750.
Applicability of the res ipsa loquitur rule is further conditioned upon a factual finding which indicates that the negligence of the defendant rather than some other factor is the most plausible explanation *345 of the accident. See Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); and Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162 (1963).
Application of the doctrine has the effect of shifting the burden of proof to the defendant to show an absence of negligence on his part. See Day v. National U. S. Radiator Corporation, 241 La. 288, 128 So.2d 660 (1961); Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 (1959); Horton v. Seligman and Latz, Inc., 260 So.2d 731 (La.App. 4th Cir. 1972); writ refused 262 La. 191, 262 So.2d 788.
The doctrine has been held applicable to hair treatment situations in Horton v. Seligman and Latz, Inc., supra, but must be applied on a case by case basis.
To determine the applicability of the res ipsa loquitur rule to the facts presented by the instant litigation a careful review of the evidence is in order.
Joy Howlley, an expert cosmetologist, was called as a witness for the plaintiff. She testified that her experience has shown that the process of "overlapping" will almost invariably cause breakage. The witness gave the following description to the court of the phenomenon of overlapping:
"Overlapping is applying bleach to areas of hair that have been prebleached, and this is not desirable. When you retouch a bleached hairhead of hair, you work only with the new growth, the dark growth, trying to lighten it as much as you've lightened the previously bleached hair. Now, if you apply bleach to hair that's been previouslypreviously bleached and leave it on as long as you leave it on the new growth, almost invariably, breakage will occur."
As to the effect of the combination of medication with a bleaching agent, Ms. Howlley further testified:
"Well, I have seen hair loss because of strong medication and very serious illnesses. Now, I'm not saying it could not happen like this, but I am saying in my experience, the hair seems to fall out all over the hair and thins at ayou know, just all over everywhere. Or it could come out in splotches, you know, just large areas. But just to concentrate just on the front because of medication, it doesn't seem feasible to me.
. . . . . .
Well, personally, I don't know what medication and bleach, the combination would do. I dont' know. I'veI know I've worked on patron's hair who have been taking medication and I have bleached and colored and permanented their hair and have never had this experience. But I do know that overlapping will cause this to happen, and I know this for sure."
This expert witness further testified that she had been taking valium and a hormone pill for a number of years and had had her own hair bleached a number of times without any adverse reaction.
Two expert cosmetologists testified on defendant's behalf: Pauline Nix, the beautician who worked on plaintiff's hair on the date of the accident and prior thereto, and Dianne Leblanc, a former co-worker of Ms. Nix's at J. C. Penney Company, Inc., who was also present on the date of said accident.
Ms. Nix testified that she felt that she had not overlapped plaintiff's hair and concluded that the cause of the damage should be attributed to an adverse reaction of the bleaching agent with the medication which plaintiff was taking at the time. However, Ms. Nix was unable to state categorically that the combination of valium 5 and thyroid with the bleaching agent was actually the specific cause of said damage. She testified as follows:
"Q. But what I'm asking you today is you cannot testify that the problem *346 with her hair was the result of the medication she was taking?
A. I can't say either way.
Q. You just don't know whether the medication had anything at all to do with the problem?
A. I would assume that it was beings that I had bleached her hair previously and didn't have this problem."
The witness further testified that although the bleaching agent was applied to a substantial portion of plaintiff's hair, the breakage occurred only in the area near the forehead. Ms. Nix was unable to give a satisfactory explanation of this phenomenon, and we find it illogical to conclude that the medication which allegedly permeated all of plaintiff's hair would only react with the bleach in a particular and isolated portion of the head, especially in light of Ms. Howlley's testimony relative to that subject.
As to the effect of medication, the following testimony was elicited from Ms. Leblanc:
"Q. Now, why is it that it is important to learn if a person is on medication before bleaching the hair?
A. Well, in my experience, any medicationwell, not any medication, but most medication that you are taking variates the heat of the body. (Emphasis added).
. . . . . .
Q. Did it? Did the type she was taking cause any variations?
A. To my knowledge, it does have some degree.
Q. Well, tell us what it does and what it
A. I'm not a chemist and I'm not a doctor. I just know what I've seen.
Q. Then you have really no knowledge that it changes the temperature or anyany texture or anything at all in the hair?
A. No. No professional knowledge of that type, no.
. . . . . .
Q. Okay. So your testimony is you don't know what the Valium and the thyroid pills cause a reaction to hair? You don't know? You say it will take a chemist and you're not a chemist?
A. Right."
All of the above expert witnesses testified that overlapping will almost invariably cause breakage such as that experienced by the plaintiff. While these witnesses testified that certain combinations of medication and bleach might cause an adverse reaction to the hair, none of them were able to specifically state that the medications which plaintiff was taking at the time could bring forth such a result. Their testimony was general and speculative, and Ms. Leblanc candidly admitted that she lacked the necessary background in chemistry to conclude that the medication taken by plaintiff could cause an adverse reaction during the bleaching process. For these reasons, we find that the defendant's negligence (overlapping) is the most plausible explanation of the injury caused to plaintiff. Therefore, we find that the doctrine of res ipsa loquitur is applicable to this situation and that it became incumbent upon the defendant to show an absence of negligence on its part.
We likewise find, under the above recited facts that defendant has failed in its burden to demonstrate its freedom from negligence.
We now turn to the issue of damages.
*347 Pursuant to LSA C.C.P. Article 2164, the Courts of Appeal are empowered with the authority to award damages in cases such as this where the trial court initially rendered a judgment of dismissal. See Schexnaydre v. Becnel, 142 So.2d 555 (La.App. 4th Cir. 1962).
Awards granted in similar cases may serve as guidelines to aid in our determination of the degree of damages to be awarded in the instant litigation. See Titard v. Lumbermen's Mutual Casualty Company, 291 So.2d 857 (La.App. 3rd Cir. 1974) and cases cited therein.
In the case of Bethancourt v. Employers' Liability Assurance Corp., 153 So.2d 921 (La.App. 4th Cir. 1963), plaintiff's hair was ruined by a permanent wave treatment which necessitated her cutting it to a length of approximately one-half inch. The hair grew back within a nine month period, and plaintiff was awarded $556.00 plus special damages.
Bailey v. American Motorists Insurance Company, 189 So.2d 106 (La.App. 1st Cir. 1966) involved a plaintiff who suffered for an irritated scalp for approximately one month after receiving a hair treatment. All of her hair either broke or fell out and what remained was short, stubby and unmanageable for a period of approximately six months and necessitated her wearing wigs for that period. Plaintiff was awarded $2,000.00 plus special damages.
In Katz v. Employers Group of Insurance Companies, 204 So.2d 695 (La.App. 4th Cir. 1967) plaintiff suffered a burned and irritated scalp and lost all of her hair in an area several inches in diameter. The hair eventually grew back. Plaintiff received $2,500.00 plus special damages.
Finally, in the case of Horton v. Seligman and Latz, Inc., supra, plaintiff's hair broke off over most of her scalp. She was forced to cut her hair very short and was required to wear hair pieces for approximately five months. For her temporary loss of hair, inconvenience, pain, embarrassment, and anguish, plaintiff was awarded $1,500.00.
In the instant case plaintiff suffered hair breakage in the frontal portion of the scalp only, although she subsequently cut all of her hair very short. Her condition necessitated the wearing of a wig for approximately one year. There was no proof of damage to plaintiff's scalp, but she suffered some degree of mental anguish and embarrassment.
After considering the general range of awards granted in the above outlined cases, the extent of damages, the dates of said awards, and the evidence adduced as to the extent of plaintiff's injuries in the case at hand, we feel that a general award of $1,000.00 is adequate and justified under the circumstances presented herein.[1]
For the above and foregoing reasons the judgment of the district court is reversed. Judgment is hereby rendered in favor of plaintiff, Gail McFarland Sheppard, and against defendants, J. C. Penney Company, Inc. and Travelers Insurance Company, in solido, in the amount of $1,000.00, plus legal interest thereon from date of judicial demand until paid. Costs at trial and on appeal are assessed against defendants.
REVERSED AND RENDERED.
NOTES
[1] Plaintiff claimed no special damages. As shown in the opinion, she was gratuitously furnished wigs, wiglets and remedial treatments by the defendant Penney after the incident.