Zimmerman, J.
 

 In seeking a reversal of the judgments below the defendant company insists that the evidence introduced was insufficient to establish its liability to plaintiff for his injuries and further insists that such evidence demonstrated that plaintiff assumed the risk of a condition which was obvious and known to him.
 

 Upon the trial of the action all the evidence was introduced by plaintiff and by witnesses he called; the defendant produced no witnesses.
 

 A perusal of the bill of exceptions discloses the following:
 

 Plaintiff purchased a gas water heater from a mercantile establishment at Hillsboro, Ohio. It was placed in the basement of the summer kitchen of plaintiff’s home, and the necessary plumbing work, including water pump and tank connections, was furnished by one Earl Miller and his employees.
 

 In June 1946, John Wright of The Wright Gas Company, Inc., with the assistance of a helper undertook to connect the heater, through piping, with a tank of “bottled gas” located above the ground and outside the house. This particular tank and other tanks, as needed, were supplied by the Wright company.
 

 During the process of connecting the gas with the heater, difficulty was experienced in securing a suitable flow of gas, and to obtain the desired flow John Wright wired open the automatic gas shutoff valve, a part of the heater, in such a way that the valve could not perform its designed function of automatically shutting off the gas to the heater when for any reason the fire under the heater was extinguished. There is no showing in the evidence that this shutoff valve was defective.
 

 
 *455
 
 Plaintiff was not conversant with the mechanics of' the heater and John Wright made no explanation to him of the effect of what he had done in wiring open the automatic shutoff valve.
 

 Later, an employee of the defendant suggested to plaintiff that he have a manually operated valve placed on the gas line leading into the heater in order to turn on or shut off the gas entering the heater. Pursuant to such suggestion, an employee of Earl Miller, at plaintiff’s request, installed the valve near the heater. Earl Miller testified that all work done by him and his employees was properly performed.
 

 About a month before the explosion, John Wright inspected the heater. “He tightened up one screw and tested it out with a match,” but did not “remove the wire that he [had] placed on this safety device.”
 

 On Saturday, May 24, 1947, the day before the explosion, plaintiff went to the basement of the summer kitchen where the heater was located to take a shower bath and found there was no hot water. He then looked at the heater and discovered that the fire had gone out. At that time he noticed no odor of gas. He then shut off the gas to the heater by turning the hand valve, above described, and departed.
 

 As to what happened the next- morning, the bill of exceptions shows the following:
 

 “Q. Can you tell us Mr. Baldridge just what happened that morning of May 25th? A. I went in to light the heater and I folded a piece of paper and struck a match to light the paper and had the explosion.
 

 “Q. Had you turned that heater on? A. Not yet, no, sir.
 

 ‘ ‘ Q. How far were you away from the heater when it exploded? A. Oh, probably 4 or 5 feet.
 

 “Q. What were you doing at the time of the explosion? A. Just lit the match.
 

 
 *456
 
 “Q. For what purpose had you lit the match? A. Intending to light the heater.
 

 “Q. Did you smell any gas in the basement that morning? A. No, sir.”
 

 The explosion was of such violence that the “ceiling in the cellar in one corner was burst loose and a part of the roof was blown off.”
 

 Earl Miller, who had had experience with “bottled gas,” testified that it has a distinct odor. On cross-examination he was asked:
 

 “Q. If there was escaping gas in the cellar and you walked down state whether or not you could smell it? A. I would say yes if you were lower down but it appears that it is low on the ground.”
 

 There is also testimony to the effect that after the explosion and in response to a telephone call to defendant’s place of business, a man appeared at the Baldridge home. He “disconnected the pipe leading from the outside into the cellar or basement,” and “went into the cellar where the heater was on two occasions. ’ ’
 

 There was a suggestion in the evidence that sewer gas from the shower bath drain might have entered the basement. However, positive evidence was to the effect that there was generally a fire under the heater and that the only explosion which ever took place in the basement was the one which occurred on the morning of May 25.
 

 Was the evidence presented sufficient to sustain the verdict and judgments for plaintiff?
 

 The undisputed testimony shows that plaintiff was not familiar with the mechanical workings of a gas water heater. He employed and paid defendant to make the gas connection from the tank of “bottled gas” to the heater and had a right to assume'that this would be properly and safely accomplished. When
 
 *457
 
 defendant wired open the automatic shutoff valve— a safety device — without advising plaintiff of the effect of what had been done, it obviously created a condition which could prove extremely dangerous. Li plaintiff’s testimony is to be believed, and the jury had a right to believe it, plaintiff relied upon defendant and followed the instructions which it gave him.
 

 Surely, where a person holds himself out as qualified and able to install a particular kind of machinery or equipment and another engages his services for such purpose, the latter, in the absence of knowledge to the contrary, has the right to assume that the work will be properly and safely done and is ordinarily under no obligation to make inquiry or search respecting faults or defects in the installation.
 
 Flint & Walling Mfg. Co.
 
 v.
 
 Beckett,
 
 167 Ind., 491, 79 N. E., 503. Compare
 
 Cooper
 
 v.
 
 Powder Puff, Inc.
 
 (La. App.), 184 So., 593;
 
 Coakley
 
 v.
 
 Prentiss-Wabers Stove Co.,
 
 182 Wis., 94, 195 N. W., 388; and 65 Corpus Juris Secundum, “Negligence,” 618, 621, 715, Sections 99, 100, 118.
 

 Plaintiff testified that he smelled no gas in the basement at any time, and there is testimony which indicates that “bottled gas” is heavier than air and when released from its container sinks to the ground. Whether plaintiff’s conduct in the basement on May 24 and again on May 25 was in accordance with the conduct of an ordinarily prudent person encountering the same or similar conditions was a factual question for the jury.
 

 In the instant case, plaintiff’s evidence and the reasonable inferences to be drawn therefrom raised a strong probability that there was an escape of “bottled gas” into the basement attributable to the fact that the efficacy of the automatic shutoff valve on the heater had been destroyed. Having succeeded in his proof to that extent, plaintiff was under no
 
 *458
 
 duty to eliminate every other possible cause for the presence of the explosive substance. After plaintiff had introduced his evidence in chief, defendant had the privilege of submitting proof, if it desired to or could, that some other factor was responsible for such explosive substance in the basement, but it did not do so. Compare
 
 Sternbock v. Consolidated Gas Utilities Corp.,
 
 151 Kan., 81, 86, 87, 98 P. (2d), 162, 166.
 

 Ordinarily, the issue of causation is for the determination of the jury and it is not for the court to substitute its reasoning for that of the jury in a field which belongs peculiarly to the latter.
 
 Drake v. City of East Cleveland,
 
 101 Ohio St., 111, 120, 1.27 N. E., 469, 471.
 

 Moreover, in civil cases, a jury is authorized to determine issues of fact as their probability or improbability may appear from the evidence produced. And for a happening to be “probable” simply means that there is more credible evidence in support of it than against it.
 

 It is patent that a terrific explosion occurred and we are of the opinion that under all the facts and circumstances disclosed by the evidence the jury was justified in reaching the conclusion without indulging in guess or conjecture that such explosion was directly due to the “bottled gas” escaping from the heater into the basement by reason of defendant having negligently wired open the shutoff valve, which valve otherwise would have operated automatically to close off the gas to the heater upon the extinguishment of the fire under the heater.
 

 It has been said that assumption of risk is a matter of knowledge of danger and intelligent acquiesence therein, whereas contributory negligence is a matter of some fault or departure from the standards of reasonable conduct, irrespective of knowledge or appreciation of danger.
 
 Masters
 
 v.
 
 New York Central
 
 
 *459
 

 Rd. Co.,
 
 147 Ohio St., 293, 301, 70 N. E. (2d), 898, 903.
 

 Both the issues of contributory negligence and assumption of risk were submitted to the jury by tile trial court in its general charge, and by returning its verdict for plaintiff the jury obviously resolved those questions in plaintiff’s favor. These were issues properly left to the jury for its determination.
 
 Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo,
 
 126 Ohio St., 140, 163, 184 N. E., 512, 521. Compare
 
 Alabama Utilities Service Co.
 
 v.
 
 Estelle,
 
 234 Ala., 226, 174 So., 496.
 

 We find no sufficient or adequate reason for reversing the judgment of the Court of Appeals and such judgment is, therefore, affirmed.
 

 Judgment affirmed.
 

 Weygandt, 0. J., Stewart, Matthias and Hart, J.J., concur.
 

 Middleton, J., not participating.