**Ramona FREEMAN, etc.,
Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 73–2231.

United States Court of Appeals,
Sixth Circuit.

Jan. 24, 1975.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Ronald Glancz, Michael Stein, Dept. of Justice, Washington,

D. C., Carla A. Hills, New York City, Morton Hollander, Washington, D. C., for defendant-appellant.

Norman W. Shibley, Donald P. Traci, Spangenberg, Hasenflue, Shibley, & Traci, Cleveland, Ohio, for plaintiff-appellee.

Before CELEBREZZE and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

This appeal requires us to determine whether the federal government is liable, under the Federal Tort Claims Act, for the deaths of sixteen persons and for injuries to two others who parachuted through a cloud cover into Lake Erie at the direction of their jump master and their pilot who had been misinformed by a federal air traffic controller that his airplane was over the Ohio airport where the parachutists were scheduled to land. The Government does not dispute that the air traffic controller was negligent in ascertaining the airplane's location, nor does it contest the reasonableness of the damage awards. Instead, the Government contends first, that the air controller owed no duty of care to the parachutists; second, that the actions were barred by the contributory negligence of the parachutists in jumping through a cloud cover; and, third, that the pilot and jump master, in directing a jump through a cloud cover were negligent and that their intervening negligence relieved the Government from any liability for the deaths and the injuries of the parachutists. The district court entered a judgment for plaintiffs. Dreyer v. United States, 349 F.Supp. 296 (N.D.Ohio 1972). We affirm.

These consolidated cases arise from the tragic drowning of 16 parachutists and from injuries to two survivors who were participating in a high altitude parachute jump on August 27, 1967. In all, 20 parachutists took off from Ortner Airfield, near Oberlin, Ohio, in a converted World War II B-25 airplane, to make a mass jump over the airport. Eighteen of the parachutists planned to jump together from 20,000 feet in a free fall maneuver, and the remaining two planned to jump from 30,000 feet.

The aircraft took off at 3 p. m. when there was only scattered cloud cover. It took approximately one hour for it to climb to 20,000 feet. During this time, the pilot maintained radio contact with the air traffic controller for the purpose of determining the plane's location and insuring that the jump would take place directly over Ortner Airfield.

At about the same time that the B-25 went aloft, a Cessna airplane took off with a photographer who planned to take motion pictures of the parachutists as they made their descent. The Cessna was flying at 12,000 feet. The district court found that the air traffic controller confused the Cessna with the B-25 on his radarscope and gave flight directions to the B-25 based on his observation of the flight path of the Cessna.

Shortly before the B-25 pilot, Karns, made his final preparation to drop the jumpers, he called the traffic controller for final verification of his heading and location. The traffic controller informed Karns that he was headed in the right direction and was only three miles from Ortner. In fact, the B-25 was headed in a northeasterly direction away from Ortner and over Lake Erie. Neither the pilot nor the passengers were aware that the plane was over water because there was a solid cloud cover below the plane.

Inside the plane, the jumpers, sitting on benches in the cargo section of the plane or in the bomb bays, were squeezed together in nearly total darkness. There were no windows permitting them to see below the aircraft. Shortly before the jump, the pilot throttled back the engines, thus giving the jumpers their first indication that it was nearly time to jump. When the time for the jump came, the bomb bay doors opened and the inside of the plane was flooded with light. The jumpers experienced difficulty adjusting their eyes to this intense light and because of temporary blindness were unaware of the clouds beneath them and the lake below

the clouds. At approximately the same time that the doors were opened, Karns relayed a hand signal to the jump master, Hartman, that they were over the target. Hartman then gave the signal for the jump and 18 parachutists evacuated the plane as quickly as they could. In fact, the district court found that they were all out of the plane within 30 seconds. It was only after they had jumped that they discovered the clouds beneath them. At 4,000 feet, when they broke through the cloud cover, they realized they were over Lake Erie approximately four miles offshore instead of over Ortner Airfield. Although a valiant rescue effort was made at the initiative of an off-duty Coast Guardsman, only two of the 18 parachutists were saved from drowning.

These negligence actions were brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), by the two survivors and by the estates of the 16 deceased jumpers for the negligence of the federal government air traffic controller. The district court, applying the law of Ohio where the negligent act occurred, Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), found that the proximate cause of the deaths and the injuries was the negligent misidentification of the B–25 by the traffic controller.

Although the district court did not determine whether the pilot and the jump master were negligent in directing the jumpers to leave the plane without ascertaining that the plane was above a cloud cover, it ruled that any negligence on their part would not be imputed to the parachutists. The district court also rejected the Government's contention that the jumpers were contributorily negligent because they jumped into a cloud cover in violation of a federal aviation regulation.

The first issue we consider is whether the air traffic controller owed a duty to parachutists. The appellant, citing no authority, claims that an air traffic controller's duty is limited to regulating air traffic and to advising planes of their location in order to avoid aircraft crashes, but that the duty does not extend to advising parachutists whether it is safe to jump.

■ Although we have found no cases concerning the duty of controllers to parachutists, other courts have concluded that a controller's duty to exercise reasonable care extends to the aircraft, passengers, crews and cargoes. Stork v. United States, 430 F.2d 1104 (9th Cir. 1970); Ingham v. Eastern Air Lines, 373 F.2d 227 (2d Cir.), cert. denied, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967); Hennessey v. United States, 12 Av.Rep. ¶ 17410 (N.D.Cal.1971). We see no reason here to exclude parachutists who are only a special kind of passenger.

■■ The law of Ohio is that actionable negligence occurs when an injury results from conduct that a reasonably prudent and careful person should anticipate would cause injury to the plaintiff or to those in a similar situation. Gedeon, Administrator v. East Ohio Gas Co., 128 Ohio St. 335, 190 N.E. 924 (1934). Here, because the air traffic control center had been advised of the high altitude mass jump, the controller knew or should have known of the purpose of the flight, and he should have anticipated that any mistake with respect to the plane's position could lead to disastrous consequences for the jumpers. Accordingly, we hold that the controller owed a duty to the jumpers to exercise due care.

■ The second issue we consider is whether the parachutists were guilty of contributory negligence. Ohio law bars recovery to any plaintiff whose negligence contributed as a proximate cause to the occurrence of the accident. Bahm v. Pittsburgh & Lake Erie R.R., 6 Ohio St.2d 192, 217 N.E.2d 217 (1966). The district court found that the skydivers aboard the B–25 were not contributorily negligent because they had no reason to suspect that the jump master would signal them to jump into solid cloud cover and because they had no reasonable means for making an independent obser-

vation of the cloud conditions below the plane.

The appellant contends, however, that the jumpers were guilty of negligence *per se* because they violated a federal aviation regulation, 14 C.F.R. § 105.29, that forbids parachute jumping through clouds. The regulation in effect at the time of the accident provided:

§ 105.29 *Clearance from clouds requirements.*

(a) No person may make a parachute jump into or through a cloud and no person may make a parachute jump—

(1) Within the continental control area, at a distance of less than 1,000 feet under, 1,000 feet over, or one mile horizontally from any cloud formation; or

(2) Outside the continental control area, at a distance less than 500 feet under, 1,000 feet over, or 2,000 feet horizontally from any cloud formation.

(b) No pilot in command of an aircraft may allow any person to make a parachute jump from that aircraft unless cloud conditions allow that person to comply with the requirements of paragraph (a) of this section. [Doc. 1491, 27 F.R. 11636, Nov. 27, 1962, as amended by document 4057, Amdt. 105–1, 29 F.R. 14920, Nov. 4, 1964.]

Appellees contend that the district court was correct because the violation of the administrative regulation was not negligence under the circumstances. It was intended to provide protection only for persons, objects or other aircraft from injury caused by parachutists jumping through clouds. It was not intended to insure the safety of parachutists as a class. Accordingly, it is argued, the violation of the administrative regulation is not negligence *per se.*

We observe that the federal air regulations have been adopted by the State of Ohio as its own. Ohio Rev.Code §§ 4561.05, 4561.14 (1973). Thus, violation of a federal air regulation constitutes a violation of Ohio law and is, under appropriate circumstances, negligence *per se.* *See* Bibler v. Young, 492 F.2d 1351 (6th Cir. 1974).[1] If an injury caused by an action which violates a safety statute is of the kind that the statute was intended to prevent, the action constitutes negligence *per se.* Gorris v. Scott, L.R. 9 Ex. 125 (1874). In that case defendant violated a statute requiring ships to provide separate pens for stock. During a storm, plaintiff's sheep were washed overboard. It was clear that the pens required by statute would have prevented the loss of the sheep, but the defendant was not liable because the statute was intended only to guard against "the possibility of sheep or cattle being exposed to disease on their way to this country." This limitation of the negligence *per se* principle has been recognized by Ohio courts. *See* Miller v. East Ohio Gas Co., 35 Ohio App. 113, 172 N.E. 300 (1930). Accordingly, if the regulation in this case was not intended to protect parachutists, its violation by them would not be the legal cause of injury to them.

The purpose of the parachute regulations whose applicability is at issue is to protect air traffic and persons or property on the ground. Thus, an introductory section to Part 105 of the Code of Federal Regulations, dealing with parachute jumping, provides:

§ 105.13 *General.*

No person may make a parachute jump, and no pilot in command of an aircraft may allow a parachute jump to be made from that aircraft, if that jump creates a hazard to air traffic or to persons or property on the surface.

1. In Bibler v. Young, 492 F.2d 1351 (6th Cir. 1974) the plaintiff-appellant violated a federal air regulation, 14 C.F.R. § 91.87(b), requiring two-way radio communication with the control tower when an aircraft is within an airport traffic area. As a result of this violation, Approach Control was unable to guide the plaintiff away from a collision with another plane. This violation was held to be negligence *per se.*

Moreover, a hearing conducted by the Senate Aviation Subcommittee concerning parachute jumping regulation supports the view that the regulations were not designed to protect the parachutist. In a letter to Senator Warren G. Magnuson, Chairman of the Senate Commerce Committee, John L. Sweeney, Assistant Secretary for Public Affairs for the Department of Transportation, stated that the rules in existence at the time of the accident were "designed primarily to prevent the jumper from creating a hazard to aircraft operating in the airspace or to persons and property on the ground." In another letter from the Chairman of the National Transportation Safety Board, Department of Transportation, it was suggested that "to direct the FAA to undertake a program designed primarily to protect the parachutists would involve a basic change in the theory of federal responsibility in this area." Finally, David D. Thomas, Deputy Administrator of the FAA testified that none of the regulations in effect at the time of the accident were designed to protect parachute jumpers because such regulation was beyond the scope of the Administrator's authority under the federal act. Hearings on S. 2137 before the Aviation Subcomm. of the Senate Comm. on Commerce, 90th Cong., 1st Sess. (1967).

■ Both the regulations and the testimony before the Senate Subcommittee on Aviation require the conclusion that the purpose of the regulations governing parachute jumping is to insure the safety of aircraft traffic and persons and property on the ground, not the safety of parachutists. Therefore, we conclude that the parachutists do not fall within the class intended to be benefited by the regulations and that their violation by the jumpers does not constitute negligence *per se.*

■ The government contends that even if it is not negligence *per se* to jump through a cloud, it is nonetheless contributory negligence as a matter of law. In Ohio, a plaintiff's disregard of reasonable standards of conduct which, if followed, would have prevented his injury will preclude his recovery. Canter v. Valley, 168 Ohio St. 590, 157 N.E.2d 113 (1959); Mills v. City of Springfield, 75 Ohio Abs. 150, 142 N.E.2d 859 (1956). However, it is also Ohio law that one need not anticipate the negligence of another until he becomes aware of that negligence. Northwest Airlines, Inc. v. Glenn L. Martin Co., 224 F.2d 120 (6th Cir. 1955), cert. denied, 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956); Baldridge v. Wright Gas Co., 154 Ohio St. 452, 96 N.E.2d 300 (1951); Mahoning Valley Railway Co. v. Kazanecka, 7 Ohio App. 289 (1917).

■ In this case, the parachutists relied on the signal from the pilot and jump master before they jumped. The pilot, in turn relied on the communication from the traffic controller that the aircraft was over the airport. The district court found that the air traffic controller negligently misidentified the plane, that the pilot signaled to the jump master for the jump even though he should have been aware of the possibility of misidentification of the plane by the controller and should have been aware of the cloud cover below the plane, and that the jump master relayed the jump signal without determining whether the plane was above a solid cloud cover. If any one of these three persons had acted in a reasonably prudent manner, the accident would not have occurred.

In concluding that the jumpers were not guilty of contributory negligence, the district court observed:

At the time the B–25 took off, the cloud cover in the vicinity of Ortner Airfield was such as to permit lawful jumping.

While airborne, the skydivers had no reasonable opportunity to observe the conditions below the plane. Those in the bomb bay area were in virtually complete darkness, being in a semi-enclosed area. While there were a window and a hatch in the rear area, the jumpers were required to remain seated on the floor of the plane and on the

plank bench at the bulkhead. From such locations their view was on a flat plane to the sides of the B–25.

Momentarily before the jump sign, the bomb bay doors opened, flooding the interior with bright light. The reaction upon the divers in the bomb bay area was described as coming out of a dark theater into bright sunlight, temporarily blinding the viewer as to conditions about him.

The first view the divers in the rear area had of the conditions outside the plane was upon their exit in response to the jump signal.

Under the facts and circumstances reflected on this record, the Court finds no basis to believe that the skydivers aboard the B–25 would have any reason to suspect that Mr. Hartman would signal them to jump into a solid cloud cover, and no reasonable means for making independent observations of the cloud conditions below the plane. The Court, therefore, finds that their exiting of the B–25 as quickly as they could in reliance upon the signal by Mr. Hartman to commence the high altitude relative work jump did not constitute negligence on their part.

In *Northwest Airlines, supra,* the plaintiff airline sued an airplane manufacturer for negligent design of several airplanes, one of which crashed as a result of the left wing being torn from the plane during a flight through a thunderstorm. The defendant contended, *inter alia,* that because representatives of Northwest were present throughout the manufacturing and testing of the airplanes, their failure to protest the use of the faulty wing splice device constituted contributory negligence. This court stated: "One to whom a duty is owed has a right to assume that it will be performed. He is not required to anticipate negligent acts or omissions on the part of others." 224 F.2d at 127. Thus, even though Northwest representatives were present and could probably have ascertained that the wing design was faulty, this court did not hold such conduct to be contributory negligence because the plaintiffs had a right to rely on the manufacturer's exercise of due care in building the planes.

Similarly, we are unable to say in this case that the parachutists should have been aware of the hazards below them when they were entitled to rely on the exercise of due care by the controller, pilot and jump master in positioning the plane directly over the airport. We believe the reliance of the parachutists on these three individuals was reasonable in light of the circumstances, and we agree with the district court's conclusion that the parachutists were not guilty of contributory negligence.

■ The next issue we consider is whether the negligence of the pilot and jump master may be imputed to the parachutists. The law of Ohio is that apart from statute and cases of joint enterprise, negligence may not be imputed. 39 Ohio Jur.2d Negligence § 114, p. 676, Toledo Rys. & Light Co. v. Mayers, 93 Ohio St. 304, 309, 112 N.E. 1014 (1916). *See also,* Cincinnati Street Ry. v. Wright, Administrator, 54 Ohio St. 181, 43 N.E. 688 (1896).

For example, in Lester v. John R. Jurgensen Co., 400 F.2d 393, 396 (6th Cir. 1968), an automobile accident case, this court stated that in Ohio, negligence can be imputed from a driver to a passenger "only if it can be shown that the [driver and passenger] were engaged in a joint enterprise of such a nature that the passenger has a right to control the acts of the driver in his operation of the vehicle." We pointed out there that:

the person alleging joint enterprise for the purpose of imputing negligence has a heavy burden of proof since the courts do not favor the doctrine. It is not sufficient that the driver and passenger are fellow employees, Parton v. Weilnau [169 Ohio St. 145, 158 N.E.2d 719 (1959)] or that they have a common destination or objective in making the trip, Casper v. Higgins, 54 Ohio App. 21, 6 N.E.2d 3 (1935), or that the passenger has paid a share of the cost of the trip. Elfers v. Bright, 108 Ohio

App. 495, 162 N.E.2d 535 (1958). Nor is it sufficient that the driver would grant any reasonable request of the passenger in routing the trip. Cf. Oswell v. Smoyer, 138 N.E.2d 168, 169 (Ohio App.1952). In cases concerning a driver and his passenger, the essential element for the imputation of negligence in Ohio is that the passenger have a right or responsibility to control the actions of the driver in his operation of the vehicle. New York, Chicago & St. Louis Railroad Company v. Kistler, 66 Ohio St. 326, 64 N.E. 130 (1902); compare Toledo Railways & Light Co. v. Mayers, 93 Ohio St. 304, 112 N.E. 1014 (1916); and Parton v. Weilnau, 169 Ohio St. 145, 158 N.E.2d 719 (1959).

400 F.2d at 396–97 [footnote omitted].

 The circumstances of this case do not rise to the level of a joint enterprise because the passengers did not have the power to control the pilot. They were completely separated from the cockpit area, and they were unable to move from their seats.

Accordingly, we follow the rule in Wasilko v. United States, 300 F.Supp. 573 (N.D.Ohio 1967), aff'd, 412 F.2d 859 (6th Cir. 1969), an Ohio airplane case, where an action was brought against the United States for the death of plaintiff's husband and son in an airport crash. Judge Thomas held that airport controllers had been negligent in granting clearance, without warning of possible wake turbulence, to a small plane to take off just behind and below an airliner. The district court held the husband-pilot contributorily negligent for failing to consider wake turbulence. With respect to the son, the court stated that although the negligence of the pilot contributed to his son's death, it was not imputable to him. Accordingly, the court allowed recovery for the son's death.

 The last issue we consider is whether the negligent conduct of the pi-

lot and jump master were intervening causes of the accident. In its brief, appellant quotes language from Thrash v. U-Drive-It Co., 158 Ohio St. 465, 110 N.E.2d 419 (1953), to the effect that:

> where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could and should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency. 65 C.J.S. Negligence § 111, pages 691, 692.

158 Ohio St. at 471, 110 N.E.2d at 422.

This language, by itself, suggests that the traffic controller's misidentification of the airplane although negligent did not cause the injuries complained of because the pilot should have "eliminated the hazard" of the jump over Lake Erie.[2] However, the law of Ohio requires that an efficient intervening cause in order to break the chain of causation must be one "not brought into operation by the original wrongful act, but operating entirely independent thereof; it must be such a cause as would have produced the result, without the co-operation of the original wrong." Dougherty, Administrator v. Hall, 70 Ohio App. 163, 172, 45 N.E.2d 608, 613 (1941).

In the *Dougherty* case, defendant argued that he should not be held liable for the plaintiff's death because, assuming his negligence caused plaintiff's injuries requiring surgery, plaintiff's death was caused by the administration of ether anaesthesia to a person with an enlarged thymus gland, a procedure that frequently causes death. The court rejected that argument and quoted with approval this statement: "The intervention of a responsible human agency between a wrongful act and the injury does not absolve the defendant from liability, if his negligence and the interven-

**2.** According to the district court's opinion, the pilot should have been aware of the possible misidentification of his plane. Possibly he should have aborted the jump for this reason, or he should not have permitted a jump because the plane was over a solid cloud cover.

ing agency cooperated in causing the injury." 70 Ohio App. at 172, 45 N.E.2d at 613, *quoting* 29 Ohio Jur. Negligence § 78. *See also* Mouse v. Central Savings & Trust Co., 120 Ohio St. 599, 167 N.E. 868 (1929), Neff Lumber Co. v. First National Bank, 122 Ohio St. 302, 171 N.E. 327 (1930).

In this case, the intervening negligence would not have produced the result without the cooperation of the original wrong committed by the traffic controller. It was the traffic controller's negligent act that caused the pilot to believe he was over his intended target. The consequence of this act continued during the entire episode and the intervening negligence of the pilot and jump master did not alone cause the descent into Lake Erie and the drowning of the 16 jumpers. Accordingly, we determine that the intervening negligence does not bar recovery.

Affirmed.