SMITH et al., Appellants,

v.

PECK HANNAFORD & BRIGGS COMPANY, INC. et al.; Petrochem Insulation, Inc. et al., Appellees.

[Cite as *Smith v. Peck Hannaford & Briggs Co., Inc.*, 161 Ohio App.3d 468, 2005-Ohio-2741.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040500.

Decided June 3, 2005.

470

Eli Namanworth, for appellants.

Rendigs, Fry, Kiely & Dennis L.L.P., Edward R. Goldman, and George J. Zamary, for appellee Petrochem Insulation, Inc.

Dinsmore & Shohl L.L.P., and Brian S. Sullivan, for appellees Fru–Con Construction Corp. and T.J. Dyer.

MARK P. PAINTER, Judge.

{¶ 1} No genuine issues of material fact remain in a negligence case when there is no evidence that the defendants breached their duties to the plaintiff. Plaintiffs-appellants Prescott and April Smith appeal the grant of summary judgment. We affirm.

## I.  Prescott's Construction–Site Woes

{¶ 2} In 1997, defendant-appellee Fru–Con Construction Corporation was the general contractor for a chemical-plant construction site.  Defendant-appellee T.J. Dyer—a company, not a person—was subcontracted to supply pipefitters and welders.  Dyer contacted Peck Hannaford & Briggs Co., Inc., to supply some of the labor.  Prescott Smith and his son, Nick Smith, worked for Peck Hannaford. (To avoid confusion, we refer to the Smiths by their first names.)  The pair worked as a team, with Nick as the pipefitter and Prescott as the welder.

{¶ 3} Employees of another subcontractor were working in the plant at the same time as Prescott and Nick, installing Foamglas pipe insulation.  Foamglas is a hard insulating material that often needs to be cut to fit the pipes.  When

Foamglas is cut or crushed, it releases a rotten-egg smell. That smell is hydrogen sulfide, which is heavier than air and can be dangerous at high-level exposures. Prescott was somewhat familiar with hydrogen sulfide and could recognize its odor.

{¶ 4} Defendant-appellee Petrochem Insulation, Inc., was working in the same area as the Smiths in late September. Although Petrochem asserts that it was not performing any pipe insulation at that time, time sheets show that their employees were insulating something in that area. For summary-judgment purposes, we construe the facts to show that Petrochem was the party performing the work at the time.

{¶ 5} The Smiths both testified in their depositions that the floor they were working on was covered, ankle-deep, in Foamglas debris. But Fru–Con, Dyer, and Petrochem employees testified that there was another subcontractor that cleaned the site full-time, that the subcontractors cleaned up after themselves several times a day, and that the construction site was clean.

{¶ 6} The record shows that Petrochem employees followed other safety procedures, including wearing breathing masks and using plastic sheets or fireproof blankets to help prevent Foamglas debris from leaving the area. The record also shows that material safety data sheets ("MSD sheets") were available to all contractors and subcontractors. These sheets explained the chemical makeup of any materials (even things as simple as Windex) that were used on-site. The MSD sheets also described any dangers that were associated with the chemicals.

{¶ 7} One day in late September, Prescott put up a welding screen before beginning his weld so that he would not flash any other workers with his welding torch. Nick left the area around the time when Prescott lay down to begin welding. About 20 minutes later, Nick returned to find Prescott still lying down but not welding. Nick spoke to Prescott and realized that Prescott had passed out. After awakening him, Nick helped Prescott sit on a bucket, but Prescott nearly fell off.

{¶ 8} After this, Nick and Prescott asked for masks to keep the dust out of their faces. Nick received one, but Prescott did not—possibly because of his beard and possibly because of a concern over a problem with one of his lungs. Prescott was then given the job of a runner rather than a welder because he said that he could not concentrate enough to weld anymore.

{¶ 9} Prescott saw several doctors, some of whom testified in depositions that Prescott suffered from toxic encephalopathy. The cause, according to at least one doctor, was probably an exposure to hydrogen sulfide—the gas released when Foamglas is crushed.

{¶ 10} Prescott and April Smith sued a large number of companies and governmental bureaus for Prescott's alleged injuries on the job. Prescott sought recovery for his alleged injuries, and April sought, among other things, compensation for loss of consortium. Only Petrochem, Fru–Con, and Dyer are parties to this appeal. After discovery, all three of them moved for summary judgment— Fru-Con and Dyer filed their motion jointly. The trial court granted both motions.

{¶ 11} On appeal, the Smiths assert three errors: (1) summary judgment was inappropriate as it related to Petrochem, (2) summary judgment was inappropriate as it related to Fru–Con and Dyer, and (3) both motions for summary judgment were improperly granted because there was a genuine issue of material fact regarding the causal connection between hydrogen sulfide and toxic encephalopathy.

## II. Negligence and Summary–Judgment Standards

{¶ 12} To establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach.[1]

{¶ 13} We review summary-judgment determinations de novo, without deference to the trial court's ruling.[2] Summary judgment is appropriately granted when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party when viewing the evidence in the light most favorable to the nonmoving party.[3]

## III. Ordinary Care and Petrochem

{¶ 14} In their first assignment, the Smiths argue that the trial court should not have granted summary judgment to Petrochem. They contend that material facts remain concerning whether Petrochem owed Prescott a duty of ordinary care and whether Petrochem breached that duty.

{¶ 15} When two or more independent contractors are working on the same premises, each contractor owes the others a duty of ordinary and reason-

---

1. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

2. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

3. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

able care not to cause injuries to employees of the other contractors[4]. "An independent contractor who lacks a contractual relationship with a second independent contractor owes no affirmative duty beyond that of ordinary care to the employees of the second contractor, where the first contractor does not supervise or actively participate in the second contractor's work."[5]

■ {¶ 16} Petrochem and Peck Hannaford were independent contractors at the same work site. The Smiths argue that Petrochem's work procedures in the same area raised its duty to Prescott to something beyond ordinary care. But the record is clear—there is no evidence that there had been a contract between the two companies, and there is no evidence that Petrochem, while installing insulation, supervised or actively participated in Peck Hannaford's work. Petrochem merely owed Peck Hannaford's employees—including Prescott—a duty of ordinary care.

■ {¶ 17} The record also shows that Petrochem used safety procedures to attempt to prevent injuries to its own and to other contractors' employees: Petrochem employees wore masks and used plastic sheets and fireproof blankets to prevent Foamglas debris from spreading throughout the plant. Petrochem employees also cleaned up their work area four or five times each day. Everyone (except Prescott and Nick) who had been at the site testified in their depositions that the site was generally kept clean.

{¶ 18} The Smiths argue that because Petrochem told its employees about some of the dangers of Foamglas and hydrogen sulfide, it also owed a duty to inform others about these dangers. But the MSD sheets were available to everyone. And it was not Petrochem's duty to inform all the workers at the site about the dangers that faced its own workers.

■ {¶ 19} We also note that the existence of a duty depends on the foreseeability of injury.[6] The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from an act or an omission.[7] And the foreseeability of the harm usually depends on the defendant's knowledge.[8]

---

4. *Kucharski v. Natl. Eng. Contracting Co.* (1994), 69 Ohio St.3d 430, 633 N.E.2d 515.

5. Id. at 434, 633 N.E.2d 515.

6. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

7. Id., citing *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626.

8. Id.

{¶ 20} Michael Fitzsimmons, a branch manager for Petrochem, testified in his deposition that Petrochem had worked with Foamglas in the past and was not aware of anyone ever complaining of an illness similar to Prescott's. In fact, none of the Petrochem, Fru–Con, or Dyer employees deposed testified that they had ever heard complaints like Prescott's or seen an injury like Prescott's. Given Petrochem's cleanup and safety measures, a reasonably prudent person would not have anticipated that Prescott would be overcome by hydrogen sulfide fumes as a result of crushed Foamglas.

{¶ 21} The record demonstrates that Petrochem did not breach its duty of ordinary care to Prescott, and that Prescott's alleged injuries were not foreseeable.

{¶ 22} We therefore overrule the Smiths' first assignment of error.

## *IV. Fru–Con and Dyer*

{¶ 23} In their second assignment, the Smiths argue that the trial court improperly granted summary judgment to Fru–Con and Dyer. They claim that genuine issues of material fact remain concerning whether Prescott was performing inherently dangerous work, whether Fru–Con and Dyer had knowledge of the hazard presented to Prescott, and whether they breached a duty by denying safety information to Prescott.

{¶ 24} One who (1) hires an independent subcontractor, (2) actually participates in the job operation performed by the subcontractor, and (3) fails to eliminate a hazard that could have been eliminated by ordinary care can be held responsible for an injury resulting from that hazard.[9]

{¶ 25} But "[a] general contractor who has not actively participated in the subcontractor's work[ ] does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work."[10] A subcontractor who works at a construction site is often engaged in inherently dangerous work.[11] And where an independent contractor performs work that involves inherent danger, no liability for that type of injury ordinarily attaches to the general contractor.[12]

---

9. See *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 113 N.E.2d 629.

10. *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 113, 21 OBR 416, 488 N.E.2d 189.

11. See *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 650 N.E.2d 416.

12. See *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 113 N.E.2d 629.

■ {¶ 26} Fru–Con was the general contractor for the construction site. And Dyer was the subcontractor that hired Peck Hannaford. Both exercised only supervisory capacity over Peck Hannaford and its employees. Fru–Con and Dyer had employees who had to inspect the site for safety, but that merely involved walking around the plant and supervising the areas. Peck Hannaford was responsible for telling its employees where to work each day.

{¶ 27} There is no evidence that either Fru–Con or Dyer actively participated in the performance of Prescott's duties.

■ {¶ 28} The Smiths argue that because Prescott's work was not related to the installation of Foamglas, his work was not inherently dangerous. But dealing with debris from other subcontractors is surely an inherent portion of any work at a construction site.

■ {¶ 29} If the subcontractor and the injured employee did not appreciate the danger to which the employee was exposed, and if the general contractor knew of the danger, then the general contractor may be liable for the injuries.[13] But, again, no one had ever heard of a case of anyone even complaining of injury from Foamglas. Prescott's alleged injuries were therefore not foreseeable. Further, Prescott testified that he was familiar with the smell of hydrogen sulfide, and that he had been instructed on prior jobs to leave the area when the odor arose.

■ {¶ 30} The Smiths also contend that Fru–Con and Dyer denied Prescott and Peck Hannaford information relating to the dangers of Foamglas. But there was no dispute that the MSD sheets were available to anyone who asked for them.

{¶ 31} We therefore overrule the Smiths' second assignment of error.

### V.  Causal Relationship to the Injuries

{¶ 32} In their third assignment, the Smiths argue that summary judgment was inappropriate for Petrochem, Fru–Con, and Dyer because a genuine issue of material fact remained concerning whether there is a causal relationship between hydrogen sulfide and toxic encephalopathy. But because none of the parties breached their duties to Prescott, any issues of fact that concerned Prescott's

---

13.   See id.

injury were rendered moot. We therefore need not comment further on the Smiths' third assignment. It is not well taken.

{¶ 33} Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

SUNDERMANN and HENDON, JJ., concur.