**MARTIN et al., Appellants,**

v.

**HIXENBAUGH et al., Appellees.**

[Cite as *Martin v. Hixenbaugh,* 179 Ohio App.3d 49, 2008-Ohio-5397.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–08–14.

Decided Oct. 20, 2008.

50

Thomas W. Gallagher, for appellants.

William A. Meadows and Martin T. Galvin, for appellees.

---

ROGERS, Judge.

{¶ 1} Plaintiff–Appellants, Drusilla and William Martin, appeal the judgment of the Allen County Court of Common Pleas granting summary judgment in favor of Defendant–Appellees, Dr. Tom X. Tan and Lima Radiological Association, Inc. On appeal, the Martins contend that the trial court erred in granting summary judgment by determining that it was not reasonably foreseeable that a patient would rely on the diagnosis of a medical professional in making the decision to allow an insurance policy to lapse. Based upon the following, we affirm the decision of the trial court.

{¶ 2} From 1993 until October 2003, Drusilla Martin paid premiums for cancer insurance that she obtained through her employer. In October 2003, she received notice that she had until December 21, 2003, to elect to pay full premiums to continue her cancer insurance or that it would lapse. In November 2003, Drusilla discovered a lump on her neck and underwent a CT scan. In December 2003, Dr. Tan informed her that the scan showed some abnormalities, but that they were not cause for concern. Thereafter, she allowed her cancer

insurance to lapse. In February 2004, a second doctor informed Drusilla that the lump was cancer.

{¶ 3} In May 2005, Drusilla and William Martin filed a complaint against Dr. Tan and Lima Radiological Association, Inc., as well as eight other defendants. The Martins' complaint alleged, in part, negligence, stating that appellees negligently departed from accepted standards of medical care in their treatment of Drusilla in failing to diagnose and treat her cancer; that appellees' negligence caused Drusilla permanent and partially disabling physical injuries, caused her to incur additional medical expenses, caused her to lose earnings, and caused her physical pain and emotional distress; and, that appellees' negligence caused William to incur medical expenses for Drusilla's treatment and to lose consortium with Drusilla.

{¶ 4} In January 2008, appellees filed their second motion for summary judgment,[1] contending that the Martins could not prove the essential element of compensable damages because they had produced no expert testimony to establish that appellees' care and treatment proximately caused damage to the Martins beyond those flowing from the canceled insurance policy and that, as a matter of law, the Martins' claimed economic damages related to cancellation of the insurance policy were not recoverable. In support, appellees attached the deposition of Dr. Robert Maki stating that, had Drusilla been diagnosed with cancer in December 2003 rather than in February 2004, there would have been no change in her treatment options, prognosis, life expectancy, staging, or risk of reoccurrence. Appellees also attached an admission of the Martins that the damages sought were limited to those related to the decision to cancel Drusilla's cancer-insurance policy.

{¶ 5} Thereafter, the Martins filed a memorandum in opposition arguing that due to Dr. Tan's negligent misdiagnosis of her condition, Drusilla had allowed her cancer insurance to lapse, which resulted in the Martins' incurring expenses for cancer-related care that would have been covered by the insurance. In support, the Martins attached a deposition of Drusilla in which she stated, "I definitely would have, had [the CT scan] been different, read differently and read showing the abnormality, I definitely would have managed to find a way to keep that cancer insurance that I had had all those years. I mean, if I would have had to, I would have borrowed money, took a loan out." The Martins also attached an affidavit of Drusilla in which she stated that, had Dr. Tan advised her that her CT scans were abnormal, she would not have allowed her cancer insurance to

---

1. Appellees filed their first motion for summary judgment in August 2006, which the trial court overruled in October 2006.

lapse, and that, as a direct result of Dr. Tan's actions, she incurred $94,961.96 in expenses, which would have been paid for by the cancer insurance.

{¶ 6} In February 2008, the trial court granted appellees' second motion for summary judgment, finding that Drusilla's decision to discontinue her cancer-insurance policy was not a reasonable, foreseeable consequence of appellees' interpretation of her CT scan, and, therefore, that appellees were not liable for the Martins' alleged economic damages. The trial court reasoned:

To rule otherwise would be to allow damages on how plaintiffs "handle life matters." Further, it would be to impose a duty upon physicians to inquire as to what, if any, type of insurance patients have, and also as indicated above, inquire as to every conceivable "life matter."

{¶ 7} It is from this decision that the Martins appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred as a matter of law in granting appellees' motion for summary judgment by determining that it is not reasonably foreseeable that a patient will rely of [sic] the educated diagnosis of a medical professional.

### Assignment of Error No. II

Ohio public policy supports the notion that when a medical professional negligently misdiagnoses a patient's medical condition he should be held liable for any damages that arise therefrom.

{¶ 8} Due to the nature of the Martins' assignments of error, we elect to address them together. Additionally, we note that the Martins raise an issue of first impression for this court and, it appears, for Ohio.

### Assignments of Error Nos. I & II

{¶ 9} In their first assignment of error, the Martins contend that the trial court erred in granting appellees' motion for summary judgment by finding that it is not reasonably foreseeable that a patient will rely on the diagnosis of a medical professional. Specifically, they argue that it is foreseeable that patients will put their trust in the expertise of medical professionals and will attend to life matters and make decisions based on those expert opinions when those life matters and decisions are directly related to the purpose for consulting the medical professional; that the trial court's reliance on *In re Estate of Blacher* (Colo.App.1993), 857 P.2d 566, was misplaced; and that the issue whether something is foreseeable is not dependent upon whether the tortfeasor anticipated the specific type of injury caused by his negligence. Additionally, in their second assignment of error, the Martins contend that Ohio public policy supports

the notion that when a medical professional negligently misdiagnoses a patient's condition, he should be held liable for any resulting damages.

{¶ 10} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support his argument. Id. at 292, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; she may not rest on the mere allegations or denials of her pleadings. Id.; Civ.R. 56(E).

{¶ 11} In order to establish medical malpractice, a plaintiff must demonstrate three elements: (1) the applicable standard of care, typically through expert testimony, (2) the defendant's negligent failure to render treatment in conformity with the applicable standard of care, and (3) that the defendant's negligence proximately caused the resulting injury. *Ulmer v. Ackerman* (1993), 87 Ohio App.3d 137, 140, 621 N.E.2d 1315, citing *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus.

{¶ 12} It is well established that foreseeability must be present in order to establish proximate cause. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 321, 544 N.E.2d 265. " 'The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.' " Id., quoting *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 O.B.R. 179, 472 N.E.2d 707, citing *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626. Further, " '[i]f an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the

injury is then the proximate result of the negligence.' " Id., quoting *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 90 N.E.2d 859.

{¶ 13} Whether it is foreseeable that a patient would rely on the diagnosis of a medical professional in making the decision to allow an insurance policy to lapse is an issue of first impression in Ohio. A Colorado appeals court in *In re Estate of Blacher* (Colo.App.1993), 857 P.2d 566, considered a situation similar to the case sub judice. In *Blacher,* a physician informed a patient that he was healthy when, in fact, he had cancer. Relying on this erroneous diagnosis, the patient canceled his life-insurance policy. After the patient's death, his widow brought a negligence action against the physician. Affirming the trial court's dismissal of her action, the appellate court held:

> [T]he law does not impose upon a physician the burden of knowing every use to which his diagnoses may be put by his patients. The cancellation of insurance is an act not reasonably foreseeable to a physician as a probable consequence of a diagnosis of a patient's condition. Hence, we hold that defendant's duty of care to decedent did not extend to plaintiff as the beneficiary of the life insurance policy unforeseeably cancelled by decedent.

*Blacher,* 857 P.2d at 568.

{¶ 14} Here, appellees contend that any negligence on their behalf did not proximately cause the Martins' economic injuries, because cancellation of the insurance policy was not foreseeable, and they cite *Blacher* in support of this logic. *Blacher* differs from the present matter because it concerned life insurance instead of cancer insurance, and because the plaintiff was not the policy holder. Nevertheless, we find the logic of *Blacher* to be persuasive. Accordingly, we find that a patient's act of canceling an insurance policy is not foreseeable to a medical-care provider as a probable consequence of diagnosis of the patient's medical condition. As the trial court stated, "[t]o rule otherwise would be to allow damages on how plaintiffs 'handle life matters.' " Accordingly, we overrule the Martins' first assignment of error.

{¶ 15} Having determined that cancellation of an insurance policy is not foreseeable under these circumstances, it follows that Ohio public policy does not support the notion that when a medical professional negligently misdiagnoses a patient's condition, he should be held liable for *any* resulting damages, regardless of foreseeability.

{¶ 16} Accordingly, we overrule the Martins' second assignment of error.

{¶ 17} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON and WILLAMOWSKI, JJ., concur.